IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENNIFER LAWRENCE,<br><br>Plaintiff<br><br>v.<br><br>NEXT INSURANCE, Inc.<br><br>and<br><br>GUY GOLDSTEIN,<br><br>Defendants. | No. ________________________ |

## COMPLAINT

Now comes Plaintiff, Jennifer Lawrence ("Lawrence"), by and through her undersigned counsel, and as and for her Complaint against Defendants NEXT Insurance, Inc. ("NEXT" or "the Company") and Guy Goldstein ("Goldstein") (collectively "Defendants"), alleges as follows:

## PARTIES AND JURISDICTION

1. Lawrence is an individual residing at 4 Longmeadow Drive, Westwood, Massachusetts.

2. NEXT is a Delaware corporation having its principal place of business at 975 California Ave, Palo Alto, California, and a Massachusetts office located at 1601 Trapelo Road, Suite 280, Waltham, Massachusetts.

3. Goldstein is NEXT's Chief Executive Officer. Upon information and belief, Goldstein primarily works and resides in California, but also works from NEXT's office in Waltham, Massachusetts.

4. This Court has jurisdiction over Lawrence's claims under the Americans with Disabilities Act of 1990, § 102, *et seq.*, 42 U.S.C.A. § 12112, *et seq.* (the "ADA"), Title VII of the

Civil Rights Act of 1964, § 701 *et seq.*, 42 U.S.C. § 2000e, *et. seq.* ("Title VII"), and the Family and Medical Leave Act, 29 U.S.C. §2601, *et seq.* ("FMLA") pursuant to 28 U.S.C. § 1331 because those claims arise under the laws of the United States.

5. This Court has jurisdiction over Lawrence's remaining claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as her ADA, Title VII and FMLA claims, and arise from the same nucleus of operative facts.

6. The Court has personal jurisdiction over both Defendants pursuant to M.G.L. c. 223A, § 3 and venue is proper in this district under 28 U.S.C. §1391 because a substantial part of the events giving rise to the claims occurred in the Commonwealth of Massachusetts and Lawrence resides within this District.

7. Lawrence has complied with all administrative prerequisites to this action. Lawrence timely filed a Charge of Discrimination ("Charge") with the Massachusetts Commission Against Discrimination ("MCAD") and Equal Employment Opportunity Commission ("EEOC") on October 2, 2023, properly withdrew her Charge more than 90 days after filing to pursue her claims in court, and thereafter received a Right to Sue letter from the EEOC to pursue her ADA and Title VII claims in Court.

## FACTS

8. Lawrence is a seasoned executive, having worked extensively in both the public and private sectors. Among other things, in the public sector she served in the Massachusetts Office of Attorney General, and as assistant secretary of economic development and general counsel for the Commonwealth of Massachusetts Executive Office of Housing and Economic Development. In the latter role, she oversaw legal affairs for agencies including the Massachusetts Division of Insurance and the Division of Banks. In the private sector, she has, among other things, served as

Chief Legal Counsel for a financial consulting firm; General Counsel and Senior Vice President for a large publicly traded insurance company; and Senior Vice president, General Counsel and corporate secretary for a privately owned group of insurance entities.

9. Throughout her career, Lawrence has also been an advocate for empowering female leaders and promoting equality and diversity. She is a founding Member (2019) of the Boston Chapter of "Chief," a private network of women in executive leadership roles developed to provide support and mentorship to one another, as well as create talent and pipeline pools to help promote opportunities for women.

***NEXT Recruits Lawrence***

10. On June 11, 2021, Lawrence was contacted by a recruiter with respect to newly created General Counsel ("GC") position at NEXT.

11. NEXT was founded in 2016 by three Israeli males: Goldstein, its Chief Executive Officer; Nissim Tipiro ("Tipiro"), its Chief Technology Officer, and Alon Huri. The Company specializes in digital insurance policies tailored to small businesses.

12. After the initial contact from the recruiter, the primary person recruiting Lawrence was Michelle Cheung ("Cheung"), NEXT's Chief Financial Officer at the time. Lawrence had positive interactions with Cheung, who expressed how impressed she was by Lawrence's credentials and experience, including regarding insurance-related entities in transition.

***Lawrence Discloses Her Cancer Diagnosis to Cheung***

13. In the course of Lawrence's discussions with Cheung, Lawrence disclosed that she had been diagnosed with cancer and that her start date may need to be delayed due to anticipated related surgery. Cheung appeared willing to accommodate Lawrence's medical situation and continued to recruit her for the role.

14. NEXT presented Lawrence with a lucrative job offer, which included significant salary and an extremely attractive equity-based compensation arrangement. The latter included beneficial features in the event of certain corporate transactions, which were presented as a NEXT near-term focus.

15. Despite having some reservations, Lawrence ultimately accepted the position with an anticipated start date of February 14, 2022. Per the terms of her initial offer letter, she would report to Cheung, who was going to be given the title of Chief Corporate Officer, and work remotely in Massachusetts.

***Two Female Executives Suddenly Leave NEXT Shortly Before Lawrence's Start Date***

16. Shortly before Lawrence's anticipated start date, Cheung informed her that she and another female executive, Ms. Sophya Pogreb ("Pogreb"), were leaving NEXT.

17. The reasons given for these sudden departures were vague and disconcerting. Cheung claimed that Pogreb was leaving for personal reasons and that Cheung was departing simply because it was "time." When Lawrence pressed Cheung for a further explanation, Cheung described her departure as a "symptom of the environment."

18. The sudden and somewhat mysterious departure of two senior female executives concerned Lawrence. Lawrence brought her reservations to Goldsten, who assured her that he found her past work experience "so impressive," and told her that it had taken NEXT over a year to identify a GC candidate with her qualifications.

19. Lawrence officially commenced employment at NEXT on March 1, 2022. Over the first few months of her employment, she made significant progress on several important initiatives and projects. This included reducing NEXT's legal spend on outside counsel, restructuring the internal legal department, and establishing an enterprise risk management team.

20. Goldstein's initial feedback on Lawrence's performance was positive.

***Goldstein Shows His True Colors***

21. In or about mid-May 2022, however, signs began to emerge that Mr. Goldstein held stereotypical and/or gender-biased beliefs about women.

22. During a regular "1 on 1," Goldstein expressed concern that a younger female Vice President had come to him upset because Lawrence was purportedly "mean" to her in a meeting. In response, Lawrence explained to Goldstein what had happened—she had simply responded to a request for a business opinion, based on years of experience in insurance, about how an organizational reporting structure relating to the Vice President's role would be perceived by insurance regulators. Goldstein nonetheless seemed to take a paternalistic, gender-biased approach; treating it like a fight between teenage girls and making demeaning comments that Lawrence's female colleague was "sensitive" and essentially ordering Lawrence to immediately "make up" with her.

23. While taken aback by Goldstein's patronizing behavior, Lawrence addressed the matter in a constructive manner with her colleague.

24. Goldstein's handling of (and attitude toward) a normal business interaction between female colleagues stood in stark contrast to his response to behaviors and conduct exhibited by various male executives. This included Tony Zhang ("Zhang"), Goldstein's Chief of Staff, and Effi Fuks Leichtag ("Fuks Leichtag"), NEXT's Chief Product Officer.

25. For example, in or about June or July 2022, Lawrence participated on a NEXT task force led by Zhang, who Goldstein had named project manager. Lawrence received multiple complaints from task force members (predominantly women) about Mr. Zhang, including several concerns over condescending, dismissive, aggressive, and/or intimidating behavior.

26. Lawrence counseled her colleagues to address their work interaction concerns directly with Zhang, which she attempted to do as well. Although Zhang seemed to acknowledge the issues with his conduct, his work style and interactions essentially remained unchanged.

27. During a regular "1 on 1" with Goldstein in July 2022, Lawrence mentioned the issues that employees had been having with Zhang's condescending and dismissive conduct, particularly toward women. Goldstein's response reflected that he applied a different standard to male leaders; he summarily dismissed any concern with Zhang's behavior, deemed it a non-issue, was completely uninterested in specifics, and stated that "most people find Tony to be 'aggressive' and 'difficult' but he does a 'good job' and 'keeps things on track,'" or words to that effect.

28. After commending Zhang for exhibiting these behaviors, Goldstein suggested he had concerns about *Lawrence's* performance because he had heard comments about her being "mean" in some unspecified manner. Lawrence was shocked by this assertion, especially given the apparent double standard that Goldstein had for his male and female subordinates. Lawrence asked Goldstein for specifics, and he responded that they were "secret."

29. Goldstein then proceeded to express concern that an email Lawrence had written to him was "mean," and that she was "mad at him." Lawrence and Goldstein pulled up the email in question, in which Lawrence had provided legal advice on a pending business matter. Lawrence explained to Goldstein that her legal advice is not driven by her emotions, and he eventually agreed that it was "silly" of him to be concerned about whether she was "mad" at him based on this email.

***Lawrence Engages in Protected Conduct***

30. During this July 2022 meeting with Goldstein, Lawrence expressed concern that her gender might be causing negative feedback regarding her performance and that she should not

be held to a different standard than her male colleagues. Goldstein responded that it had "nothing to do with role or gender," but cautioned that it was important she be "liked" at NEXT.

31. Notwithstanding Goldstein's comments at the July 2022 meeting, all other feedback she received concerning her job performance was positive. This included feedback from other key leaders, including Tipiro, regarding, among other things, her work product and leadership. Goldstein seemed to agree, stating during a subsequent "1 on 1" between Lawrence and Goldstein that she was "doing a great job."

***Lawrence Observes More Red Flags***

32. While Lawrence was pleased with the positive feedback, she remained concerned about possible gender bias, and she brought to Goldstein's attention another example of her concerns. Specifically, she recounted that a female member of her team had complained about certain demeaning behavior to which she felt subjected by Fuks Leichtag, leading her to express fear that women leaders at NEXT were being intimidated to "not have a voice," or words to that effect.

33. Goldstein was again dismissive, quickly rising to the defense of his male executive by commenting that "everyone thinks [Fuks Leichtag] is a bully when they first meet him and then they end up telling me that he is a teddy bear and they love him," or words to that effect.

34. Despite Lawrence's ongoing concerns, she continued to work diligently and well on behalf of NEXT throughout 2022. Among other things, she helped create a captive carrier for NEXT, led legal initiatives on revenue increasing ideas, established an IPO readiness task force, and successfully partnered with business teams initiatives.

35. Meanwhile, Goldstein continued to provide positive feedback during regular weekly meetings and otherwise.

***Goldstein Publicly Praises Lawrence***

36. Indeed, in an article in Vanguard Law Magazine dated December 2, 2022, featuring Lawrence, and posted to NEXT's social media, Goldstein stated, "we are incredibly lucky to have [Lawrence] as part of the Team…she's passionate about our mission and her expertise in insurance and government policy provide [sic] unique set of skills that will help continue to grow the company."

37. On January 5, 2023, during a regularly scheduled "1 on 1," Goldstein was extremely complimentary of Lawrence's performance. He said that she was doing "amazing things" and made complimentary remarks concerning her work, including about her guidance of the legal team and work with business teams. Goldstein told her that she had already had a positive impact on her team and the Company in general. He further stated that he was personally pleased with her performance and leadership and specifically thanked her for the pre-IPO work she had begun.

38. Unfortunately, Goldstein's positive view of Lawrence's work performance was not the only subject discussed during the January 5, 2023 meeting.

***"We Would Never Fire You For Health Reasons"***

39. Earlier that day, Lawrence's oncologist had informed her that her prior surgeries related to her breast cancer diagnosis were not completely successful and that additional treatment was needed. The next step would be an oophorectomy (removal of ovaries and fallopian tubes) scheduled for January 20, 2023, possibly followed by additional surgeries and procedures after that.

40. During the January 5, 2023 meeting, Lawrence informed Goldstein about the bad news she had received from her oncologist and requested medical leave. She assured him that she

would take as short a medical leave as possible. While Mr. Goldstein seemed eager to convince her that the Company would be supportive of the accommodations she would need, he blurted out a comment that struck Lawrence as odd: "We would never fire you for health reasons."

41. Four days later she was fired.

42. Goldstein informed Lawrence of her termination in a Zoom meeting that took place at 7am Pacific Time on January 9, 2023. When the meeting began, Goldstein was accompanied by an outside attorney named Doreen Lilienfeld, from the law firm of Shearman & Sterling LLP.

43. Goldstein stated that, immediately after the January 5, 2023 meeting, he had done an "emergency" 360 review on Lawrence over the weekend and "found out" (providing no specificity or examples) that she was "bullying" and creating a "hostile work environment." Lawrence was shocked and asked for examples and specifics. Mr. Goldstein's only response, before being shut down by Attorney Lilienfeld, was "wow, maybe you really don't know what a bully you are."

44. Upon information and belief, NEXT subsequently changed its story concerning the decision to terminate Lawrence's employment. Specifically, Attorney Lilienfeld claimed that she began an "investigation" regarding Lawrence's conduct at work months prior to Lawrence's termination, and that it was this alleged investigation—and not the "emergency" 360 review cited by Mr. Goldstein—that prompted NEXT to terminate her.

45. NEXT had no valid basis to "investigate" Lawrence. If any such "investigation" was conducted, it was a sham motivated by discriminatory and/or retaliatory bias.

## COUNT I
## Disability/Handicap Discrimination (Against NEXT))

46. Lawrence realleges and incorporates the above paragraphs as if fully set forth herein.

47. Lawrence timely met the administrative prerequisites to suit under the ADA and M.G.L. c. 151B.

48. Through the conduct alleged above, NEXT engaged in disability/handicap discrimination against Lawrence in violation of the ADA and M.G.L. c. 151B.

49. As a direct and proximate result thereof, Lawrence has suffered and continues to suffer damages, including but not limited to loss of compensation and benefits, and emotional distress damages.

**COUNT II**
**Sex Discrimination (Against NEXT)**

50. Lawrence realleges and incorporates the above allegations as if fully set forth herein.

51. Lawrence timely met the administrative prerequisites to suit under Title VII and M.G.L. c. 151B.

52. Through the conduct alleged above, NEXT engaged in sex discrimination against Lawrence in violation of Title VII and M.G.L. c. 151B.

53. As a direct and proximate result thereof, Lawrence has suffered and continues to suffer damages, including, but not limited to, loss of compensation and benefits, and emotional distress damages.

**COUNT III**
**Retaliation (Against NEXT and Goldstein)**

54. Lawrence realleges and incorporates the above allegations as if fully set forth herein.

55. Lawrence timely met the administrative prerequisites to suit under Title VII, the ADA, and M.G.L. c. 151B.

56. Through the conduct alleged above, NEXT engaged in retaliation against Lawrence in violation of Title VII, the ADA, and M.G.L. c. 151B.

57. Through the conduct alleged above, Goldstein engaged in retaliation against Lawrence in violation of M.G.L. c. 151B.

58. As a direct and proximate result thereof, Lawrence has suffered and continues to suffer damages, including, but not limited to, loss of compensation and benefits, and emotional distress damages.

**COUNT IV**
**Interference in Violation of M.G.L. c. 151B (Against Goldstein)**

59. Lawrence realleges and incorporates the above allegations as if fully set forth herein.

60. Through the conduct alleged above, Goldstein interfered with Lawrence's exercise or enjoyment of her right to be free of discrimination on the basis of her gender and handicap, in violation of M.G.L. c. 151B, § 4(4A).

61. As a direct and proximate result thereof, Lawrence has suffered and continues to suffer damages, including, but not limited to, loss of compensation and benefits, and emotional distress damages.

**COUNT V**
**Tortious Interference (Against Goldstein)**

62. Lawrence realleges and incorporates the above allegations as if fully set forth herein.

63. Through the conduct alleged above, Goldstein, intentionally, with laice and through the use of improper means and/or motives, interfered with Lawrence's advantageous business relationships.

64. As a direct and proximate result thereof, Lawrence has suffered and continues to suffer damages, including, but not limited to, loss of compensation and benefits, and emotional distress damages.

**COUNT VI**
**Violation of the FMLA (Against NEXT and Goldstein)**

65. Lawrence realleges and incorporates the above allegations as if fully set forth herein.

66. Through the conduct alleged above, Defendants violated Lawrence's rights under the FMLA, including by means of interference and retaliation.

67. As a direct and proximate result thereof, Lawrence has suffered and continues to suffer damages, including, but not limited to, loss of compensation and benefits, and emotional distress damages.

**COUNT VII**
**Violation of M.G.L. c. 175M (Against NEXT and Goldstein)**

68. Lawrence realleges and incorporates the above allegations as if fully set forth herein.

69. Through the conduct alleged above, Defendants violated Lawrence's rights under the Massachusetts Paid Family and Medical Leave Act, M.G.L. c. 175M (**"**PFML"), including by means of interference and retaliation.

70. As a direct and proximate result thereof, Lawrence has suffered and continues to suffer damages, including, but not limited to, loss of compensation and benefits, and emotional distress damages.

## PRAYER FOR RELIEF

WHEREFORE, Lawrence respectfully requests that this Court:

1. Enter judgment in her favor and against Defendants on all Counts;
2. Award her compensatory damages;
3. Award her, at her election, such relief as will make her whole for her loss of equity interests;
4. Award her emotional distress damages, with interest at the statutory rate;
5. Award her punitive and liquidated damages;
6. Award her attorney's fees and all other costs of litigation; and
7. Order such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Lawrence hereby demands a trial by jury on all Counts that are so triable.

Respectfully submitted,
Plaintiff Jennifer Lawrence,
By her attorneys,

*/s/ Patrick J. Hannon*

Patrick J. Hannon, BBO# 664958
Austin W. Smith, BBO# 707740
Hartley Michon Robb Hannon, LLP
101 Federal Street, Suite 1810
Boston, MA 02110
P: (617) 723-8000
F: (617) 447-2800
phannon@hmrhlaw.com
asmith@hmrhlaw.com

Date: May 14, 2024