UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JENNIFER LAWRENCE,

Plaintiff,

v.

NEXT INSURANCE, INC. and
GUY GOLDSTEIN,

Defendants.

Civil Action No: 1:19-CV-11605-WGY

**PLAINTIFF'S OPPOSITION TO**
**DEFENDANT NEXT INSURANCE, INC.'S MOTION TO DISMISS**

## INTRODUCTION

This is a dispute about motive. On January 9, 2023, Plaintiff was fired by her employer, NEXT Insurance, Inc. ("NEXT"). The termination came just four days after Plaintiff informed NEXT of a serious deterioration in her health that was going to require significant surgery. Initially, NEXT claimed that Plaintiff's termination arose from information gathered in an "emergency" 360 review conducted immediately after her disclosure. Later, NEXT changed its story, claiming that the termination was based on an "investigation" conducted months prior. In both versions of NEXT's story, however, it cited a subjective (and likely gender-based) rationale for the termination: That Plaintiff was perceived as a "bully."

As discussed below, the facts alleged in the Complaint plausibly suggest that NEXT's decision to terminate Plaintiff's employment was the result of one or more forms of unlawful discriminatory animus: disability/handicap bias (Count I), sex bias (Count II), and retaliation (Count III and VII). Accordingly, NEXT's motion to dismiss must be denied.[1]

## FACTS

Plaintiff was initially recruited by Michelle Cheung, who was then serving as NEXT's Chief Financial Officer. (Compl. ¶ 10). Shortly before Ms. Lawrence's anticipated start date, however, Ms. Cheung informed her that she and another female executive, Sophya Pogreb, were leaving NEXT. (Id. ¶ 16). The reasons given for these sudden departures were vague and disconcerting. (Id. ¶ 17). Ms. Cheung claimed that Ms. Pogreb was leaving for personal reasons and that Ms. Cheung was departing simply because it was "time." (Id.). But when Ms. Lawrence

[1] Given the overlap between her claims under the Massachusetts Paid Family Leave Act and federal Family Medical Leave Act, Plaintiff does not oppose dismissal of her FMLA claim and will voluntarily dismiss that claim.

pressed Ms. Cheung for a further explanation, Ms. Cheung described her departure as a "symptom of the environment." (Id.)

The sudden and somewhat mysterious departure of two senior female executives concerned Ms. Lawrence. (Id. ¶ 18). So much so that she brought her reservations to Mr. Goldstein, who assured her that he found her past work experience "so impressive," and told her that it had taken NEXT over a year to identify a candidate with her qualifications. (Id.).

In or about mid-May 2022, however, signs began to emerge that Mr. Goldstein held stereotypical and/or gender-biased beliefs about women. (Id. ¶ 21). During a regular "1 on 1," Mr. Goldstein expressed concern that a younger female Vice President had come to him upset because Ms. Lawrence was purportedly "mean" to her in a meeting. (Id. ¶ 22). Ms. Lawrence explained to Mr. Goldstein that she was simply providing her business opinion, but Mr. Goldstein nonetheless seemed to take a paternalistic, gender-biased approach, treating it like a fight between teenage girls, saying that Ms. Lawrence's female colleague was "sensitive" and essentially ordering Ms. Lawrence to immediately "make up" with her. (Id.).

Mr. Goldstein's handling of (and attitude toward) a normal business interaction between female colleagues stood in stark contrast to his response to behaviors and conduct exhibited by various male executives. (Id. ¶ 24). This included Tony Zhang, Mr. Goldstein's Chief of Staff ("Mr. Zhang"), and Effi Fuks Leichtag, NEXT's Chief Product Officer ("Mr. Fuks Leichtag"). (Id.).

During another "1 on 1" in July 2022, Ms. Lawrence told Mr. Goldstein that employees had been experiencing condescending and dismissive conduct, particularly toward women, from Mr. Zhang. (Id. ¶ 27). Mr. Goldstein summarily dismissed any concern with Mr. Zhang's behavior, stating that "most people find Tony to be 'aggressive' and 'difficult' but he does a 'good job' and

'keeps things on track,'" or words to that effect. (Id. ¶). After commending Mr. Zhang for exhibiting these behaviors, Mr. Goldstein said he had concerns about Ms. Lawrence because he had heard comments about her being "mean" in some unspecified manner. (Id. ¶ 28). When Ms. Lawrence asked Mr. Goldstein for specifics, he responded that they were "secret." (Id.).

During this July 2022 meeting with Mr. Goldstein, Ms. Lawrence expressed concern that her gender might be causing the negative feedback and that she should not be held to a different standard than her male colleagues. (Id. ¶ 30). Mr. Goldstein responded that it had "nothing to do with role or gender," but cautioned that it was important she be "liked" at NEXT. (Id. ¶ 30).

At another meeting, Ms. Lawrence also recounted to Mr. Goldstein that a female member of her team had complained about demeaning behavior from Mr. Fuks Leichtag, leading Ms. Lawrence to express fear that women leaders at NEXT were being intimidated to "not have a voice," or words to that effect. (Id. ¶ 32). Mr. Goldstein was again dismissive, quickly rising to the defense of his male executive by commenting that "everyone thinks [Mr. Fuks Leichtag] is a bully when they first meet him and then they end up telling me that he is a teddy bear and they love him," or words to that effect. (Id. ¶ 33). Meanwhile, Mr. Goldstein had no issue criticizing Ms. Lawrence's allegedly "mean" behavior.

On January 5, 2023, Plaintiff disclosed to NEXT that there had been a significant deterioration in her health. (Id. ¶¶ 39-40). Specifically, she told Mr. Goldstein that prior surgeries to treat her breast cancer had not been entirely successful, and that she would need to take medical leave to undergo an extensive surgical procedure (removing her ovaries and fallopian tubes), which might be followed by additional surgeries and procedures may also be required after that. (Id.)

Mr. Goldstein responded by saying, "we would never fire you for health reasons." (Id. ¶ 40). Four days later she was fired. (Id. ¶ 41).

Mr. Goldstein informed Ms. Lawrence of her termination in a Zoom meeting on January 9, 2023. (Id. ¶ 42). When the meeting began, Mr. Goldstein was accompanied by an outside attorney named Doreen Lilienfeld, from the law firm of Shearman & Sterling LLP. (Id.). Mr. Goldstein stated that, immediately after the January 5, 2023 meeting, he had done an "emergency" 360 review of Ms. Lawrence over the weekend and "found out" that she was "bullying" and creating a "hostile work environment," without providing any examples. (Id. ¶ 43). NEXT subsequently changed its story, claiming that the termination was based on an investigation conducted by Attorney Lilienfeld months earlier. (Id. ¶ 44).

At all relevant times, Plaintiff's performance of her duties and responsibilities at NEXT were more than satisfactory. (Id. ¶¶ 19-20, 31, 34-37). Indeed, just four days before her termination, Mr. Goldstein had been extremely complimentary of Plaintiff's performance. (Id. ¶ 37). Specifically, Mr. Goldstein:

- said that she was doing "amazing things" and made complimentary remarks concerning her work, including about her guidance of the legal team and work with business teams;
- told her that she had already had a positive impact on her team and the Company in general; and
- stated that he was personally pleased with her performance and leadership and specifically thanked her for the pre-IPO work she had begun.

(Id.).

**ARGUMENT**

## I. MOTION TO DISMISS STANDARD

When analyzing a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim, the court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st

Cir. 2007). The Complaint should "set forth minimal facts as to who did what to whom, when, where, and why." Educadores Puertorriquenos En Accion v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004). Plaintiff need only allege "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556)).

## II. PLAINTIFF'S DISABILITY/HANDICAP CLAIMS ARE SUFFICIENTLY PLED

### A. Disability/Handicap Discrimination Claims

To state a claim for disability discrimination under the ADA and Section 151B, Plaintiff's factual allegations must plausibly suggest that "(1) [s]he suffers from a disability or handicap, as defined by the ADA and Chapter 151B, that (2) [s]he was nevertheless able to perform the essential functions of [her] job, either with or without reasonable accommodation, and that (3) [her employer] took an adverse employment action against [her] because of, in whole or in part, [her] protected disability." Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 104 (1st Cir. 2005). Defendant does not dispute that Ms. Lawerence suffered from a disability/handicap as defined by the statutes or that she was able to (and did) perform her job satisfactorily. Defendant only contends that the Complaint fails to sufficiently plead motive; that is, that NEXT took an adverse employment action against her because of her disability.

That contention borders on frivolous. To begin, Ms. Lawrence was fired ***four days*** after disclosing that her health had significantly deteriorated and now required a major surgery—possibly to be followed by additional surgeries and procedures. (Compl. ¶¶ 39-41). NEXT's assertion that this staggering temporal proximity is "not enough" to survive a motion to dismiss is flatly wrong. See Ortiz v. Fed. Bureau of Prisons, 290 F. Supp. 3d 96, 107 (D. Mass. 2017) (allegation that adverse action was taken just five days after protected activity was sufficient to

plausibly suggest causation at motion to dismiss stage). Indeed, it is well settled that "Temporal proximity can create an inference of causation." Soni v. Wespiser, 404 F. Supp. 3d 323, 332 (D. Mass. 2019).

The sole case relied upon by NEXT, Woldemariam v. Pilgrim Parking, No. MICV2008-00176, 2008 WL 650412 (Mass. Sup. Ct. Feb. 8, 2008), is not to the contrary. That was a summary judgment decision and did not address Rule 12's plausibility standard. Moreover, the Court in that case actually relied on temporal proximity for purposes of holding that the plaintiff had presented sufficient evidence to meet the prima facie case of handicap discrimination. Id. at *5 & 7.

In any event, the facts plausibly suggesting NEXT's unlawful motive are not limited to temporal proximity. The Complaint also contains a variety of other evidence that plausibly suggests the reason given for Ms. Lawrence's termination was a pretext for discrimination. Adamson v. Walgreens Co., 750 F.3d 73, 79 (1st Cir. 2014) ("Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.") (quoting Gómez–González v. Rural Opportunities Inc., 626 F.3d 654, 662–63 (1st Cir. 2010)). Such evidence includes:

- Mr. Goldstein's initial claim that his "emergency" 360 was conducted immediately after Plaintiff disclosed the deterioration in her health; (Compl. ¶ 43)
- NEXT's efforts to subsequently change its story, claiming that an "investigation" had been conducted months prior; (Id. ¶ 44)
- The implausibility of NEXT's contention that an "investigation" had been conducted months prior, despite the extensive positive feedback that Mr. Goldstein provided Plaintiff on January 5, 2023; (Id. ¶ 37)

- The wholly subjective reason given by NEXT for Plaintiff's termination, for which NEXT refused to provide any explanation or examples. (Id. ¶ 43)

Perhaps most significant, however, is Mr. Goldstein's spontaneous declaration that "we would never fire you for health reasons." Contrary to NEXT's assertion otherwise, this statement should not be taken at face value, or otherwise assumed to evince a lack of discriminatory animus. Viewed in the light most favorable to Plaintiff, this was a Freudian slip-like statement. Specifically, it reflected that—the moment Mr. Goldstein learned of Plaintiff's deteriorated health and need for major surgery—his internal thought process immediately turned to the desirability of terminating Plaintiff's employment. The statement further reflected Mr. Goldstein's knowledge that he could not legally terminate Plaintiff on that basis, and would need to find some pretext for doing so—such as an "emergency" 360 review.

Lastly, it bears mention that NEXT's knowledge of Plaintiff's cancer diagnosis at the time of her hire is much different from the information NEXT received about her condition in January 2023. Specifically, NEXT learned that the prior surgeries had not been entirely successful, and that she would now need to take medical leave to undergo an extensive surgical procedure (removing her ovaries and fallopian tubes), which might be followed by additional surgeries and procedures may also be required after that. (Compl. ¶ 39-40). This deterioration in her condition plausibly suggested a much different state of affairs—one in which treatment was not working and the course of Plaintiff's illness was headed in an increasingly negative direction.

For all of these reasons, the facts plausibly suggest an entitlement to relief on these claims, and the motion to dismiss must be denied.

**B. Disability/Handicap Retaliation Claims**

For similar reasons, Plaintiff's Section 151B and ADA claims for retaliation based on protected activity related to her disability are also sufficiently pled. To make out a retaliation claim,

plaintiff must allege facts plausibly suggesting that "[s]he engaged in protected conduct, that [s]he suffered some adverse action, and that 'a causal connection existed between the protected conduct and the adverse action.'" Psy-Ed Corp. v. Klein, 459 Mass. 697, 707 (2011), quoting Mole v. University of Mass., 442 Mass. 582, 591-92 (2004); see also Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 16 (1st Cir. 1997) (ADA standard).

Plaintiff's request for medical leave in January 2023 was a form of protected activity because requests for accommodation qualify as protected conduct for purposes of an ADA or Chapter 151B retaliation claim. Incutto v. Newton Pub. Sch., No. CV 16-12385-LTS, 2019 WL 1490132, at *4 (D. Mass. Apr. 4, 2019); Gauthier v. Sunhealth Specialty Servs., Inc., 555 F. Supp. 2d 227, 244 (D. Mass. 2008). Further, Plaintiff's termination four days later clearly constitutes an "adverse action." Accordingly, the only question remaining is whether the facts plausibly suggest a causal nexus between the two

A court may infer a causal connection where "adverse action is taken against a satisfactorily performing employee in the immediate aftermath of the employer's becoming aware of the employee's protected activity." Mole, 442 Mass. at 592; see also DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2009) ("temporal proximity alone can suffice to meet the relatively light burden of establishing a prima facie case of retaliation") (internal quotations omitted); Collazo v. Bristol-Myers Squibb Mfg., Inc., 617 F.3d 39, 49-50 (1st Cir. 2010) (11 days between protected activity and termination sufficient to establish *prima facie* case of retaliation); Polo-Echevarria v. Centro Medico del Turabo, Inc., 949 F. Supp. 2d 332 (D.P.R. 2013) (denying motion to dismiss because plaintiff engaged in protected activity and was shortly thereafter terminated, and explaining that "[d]epending on the particular set of facts at hand, temporal proximity alone can suffice to meet the relatively light burden of establishing a prima facie case of retaliation.") (internal quotations

omitted). Here, Plaintiff engaged in protected conduct by requesting medical leave for her disability and NEXT retaliated by initiating a 360 review and terminated her four days later. The causal nexus could not be clearer.

But again, temporal proximity is not the only evidence plausibly suggesting that the reason given by NEXT for the termination was a pretext for discrimination. The same evidence discussed above concerning the "implausibilities, inconsistencies, incoherencies, and contradictions" in NEXT's story apply with equal force here, and NEXT's motion to dismiss must be denied. See Adamson, 750 F.3d at 79.

## III. PLAINTIFF'S SECTION 151B AND TITLE VII GENDER CLAIMS ARE SUFFICIENTLY PLED

### A. Gender/Sex Discrimination Claims

To state a claim for gender discrimination, Plaintiff must allege facts plausibly suggesting that (1) "she is a member of a protected class"; (2) "she was subject to an adverse employment action"; (3) "the employer bore 'discriminatory animus' in taking that action"; and (4) the "animus was the reason for the action." Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 680 (2016). Meeting this standard "is not onerous." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st Cir. 2000).[2]

Defendant does not dispute that Ms. Lawerence is a member of a protected class or that she was subject to an adverse employment decision. Defendant only contends that the Complaint fails to allege sufficient allegations that NEXT bore a discriminatory animus, which was the reason for her termination.

[2] Title VII claims for discrimination are analyzed under the same standard. White v. University of Mass. at Boston, 410 Mass. 553, 557 (1991).

Again, NEXT's contention borders on frivolous. First, the Complaint is replete with allegations plausibly suggesting that NEXT judged women differently than men. When confronted with complaints about a male employee who was "aggressive" and "difficult," Mr. Goldstein praised him for doing a "good job" and "keep[ing]things on track." (Compl. ¶ 27). Likewise, when Plaintiff brought forward a complaint that a male employee was engaging in "demeaning" and "intimidate[ing]" behavior, Mr. Goldstein dismissed the concern while acknowledging that "everyone thinks he is a bully when they first meet him." (Id. ¶ 32). By contrast, the facts plausibly suggest that Mr. Goldstein was hyper-sensitive to any signs of animosity or disapproval from Plaintiff—concerns that he acknowledged were "silly." (Id. ¶ 29) Even if the accusations about Ms. Lawrence's alleged "bullying" behavior were true – which she contests –the facts plausibly suggest that male employees engaging in similar behaviors were *not* terminated and were *not*, upon information and belief, subject to a "360 review." (Id. ¶¶ 27, 32) Only Ms. Lawrence was subject to this treatment. (Id. ¶¶ 42-44).

Second, the Complaint also contains evidence of a general atmosphere of discrimination towards women within NEXT. Conway v. Electro Switch Corp., 825 F.2d 593, 597 (1st Cir.1987) ("While evidence of a discriminatory atmosphere may not be conclusive proof of discrimination against an individual plaintiff, such evidence does tend to add 'colo' to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff"). This includes evidence that two other female executives departed the company under circumstances that suggested possible gender concerns. (Compl. ¶¶ 16-17). The Complaint also identifies statements by Mr. Goldstein that could be interpreted as "reflecting stereotypical thinking categorizing people on the basis of broad generalizations." Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 686 (2016) (cleaned up). This included comments about women

being "mean" and "sensitive," and expressing concerning that Plaintiff might be "mad at him." (Compl. ¶¶ 22, 29).

And lastly, much of the same evidence discussed above concerning the "implausibilities, inconsistencies, incoherencies, and contradictions" in NEXT's story are also probative of whether the reasons given for Plaintiff's termination were merely a pretext for discrimination. See Adamson, 750 F.3d at 79. For all of these reasons, the motion to dismiss must be denied.

**B. Gender/Sex Retaliation Claims**

Plaintiff also brings a claim for retaliation against NEXT under Title VII and Section 151B. To establish a *prima facie* case of retaliation, Plaintiff must plausibly allege just three elements: (1) that she engaged in protected conduct, (2) that she suffered some adverse action, and (3) that a causal connection existed between the protected conduct and the adverse action. Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 406 (2016).[3] Defendant only challenges the third element, claiming that there is no causal connection between the protected conduct and the adverse action.

As with the claims discussed above, the "implausibilities, inconsistencies, incoherencies, and contradictions" in NEXT's story are also probative of whether the reasons given for Plaintiff's termination were merely a pretext for retaliation. See Adamson, 750 F.3d at 79. And that alone is sufficient to make the "small showing" required at this stage, particularly given the fact a showing of pretext is a legally sufficient basis to infer unlawful animus. Bulwer, 473 Mass. at 682–83 (noting that Massachusetts is a "pretext only" jurisdiction).

[3] The standards are essentially the same for both Title VII and Section 151B. See Lopez-Hernandez v. Terumo Puerto Rico LLC, 64 F. 4th 22, 31 (1st Cir. 2023).

But, again, there is more. Plaintiff first engaged in protected conduct during a July 2022 meeting with Mr. Goldstein, when she expressed concern that her gender might be causing negative feedback regarding her performance and that she should not be held to a different standard than her male colleagues. See Jacquet v. City of Somerville, No. CV 18-10167, 2020 WL 3545535, at *4 (D. Mass June. 30, 2020) (quoting Fantini v. Salem State Coll., 557 F.3d 22, 32 (1st Cir. 2009) ("Protected activity includes…informal protests of discriminatory employment practices, including making complaints to management….")). In response, Mr. Goldstein said it had "nothing to do with role or gender," but said it was important that she be "liked" at the Company. (Compl. ¶ 30). Plaintiff continued to express her concerns to Mr. Goldstein in future meetings, including when she told him that women leaders at NEXT were intimidated to "not have a voice." (Compl. ¶ 32).

If the most recent version of NEXT's story is to be believed, and it commenced an "investigation" into Plaintiff's conduct "months" prior to her termination (Compl. ¶ 44), that would plausibly suggest an extremely close temporal with Plaintiff's protected activity. And again, that temporal proximity is enough at this stage. Alternatively, even if the investigation did not occur until January 2023, the fact that approximately six months lapsed between the time of the first protected activity and the termination/investigation does not negate causation. See Garayalde-Rijos v. Mun. of Carolina, 747 F.3d 15, 25-26 (1st Cir. 2014) (finding that district court erred in dismissing retaliation claim based solely on the fact that five months elapsed between the protected conduct and adverse employment action).

Lastly, "a plaintiff can still succeed on a retaliation claim despite a lack of proximity if the record supports 'a pattern of antagonism in the intervening period.'" Soni v. Wespiser, 404 F. Supp. 3d 323, 333 (D. Mass. 2019); see also Che, 342 F.3d at 38-39 (although demotion occurred

11 months after filing of discrimination claim, there was other evidence of discriminatory and disparate treatment in the time between the protected activity and adverse employment action that demonstrated causal connection."). The facts plausibly suggest such a scenario here, where after the initial protected activity, Mr. Goldstein consistently held Ms. Lawrence to a different standard than her male colleagues, criticizing her for her alleged abusive behavior while disregarding the behavior of other male executives.

The motion to dismiss should be denied.

## IV. Plaintiff's M.G.L. c. 175M Claim is Sufficiently Pled

Plaintiff's seventh cause of action is for interference and retaliation under the PFML, M.G.L. c. 175M. The statute provides that "[m]edical leave shall be available to any covered individual with a serious health condition that makes the covered individual unable to perform the functions of the covered individual's position." Id., § 2(a)(2). It also makes it unlawful for "any employer to retaliate by discharging, firing, suspending, expelling, disciplining…or in any other manner discriminating against an employee for exercising any right to which such employee is entitled under this chapter or with the purpose of interfering with the exercise of any right to which such employee is entitled under this chapter." Id., § 9(a).

Again, Defendant contends that the PMFL claim fails because it does not plausibly demonstrate that Ms. Lawerence's termination had anything to do with her exercise or attempted exercise of her rights. As Defendant only references its arguments as to why the FMLA claim should have been dismissed, Plaintiff assumes Defendant is relying on the argument that temporal proximity, by itself, is insufficient for the claim to survive a motion to dismiss. But even if the FMLA standard would apply, which is not clear, that is not the standard under the FMLA. See Hodgens v. General Dynamics Corp. 144 F.3d 151, 168, 170 (1st Cir. 1988) (in FMLA case, stating that, "close temporal proximity between two events may give rise to an inference of causal

connection"); Rhoades v. Camden Nat. Corp., 575 F. Supp. 2d 260, 262 (D. Maine) (in FMLA case, explaining that "under clear First Circuit precedent, this close temporal proximity can be sufficient to sustain the Plaintiff's *prima facie* burden in her retaliation claim."). All of the arguments discussed above with respect to causal nexus are of equal force here, and the motion to dismiss should be denied.

To the extent that Defendant is also relying on its argument from the FMLA section that Plaintiff cannot bring both a retaliation claim and an interference claim at the same time under the PFML, that argument fails because Plaintiff alleges that Defendant both initiated an investigation and terminated Plaintiff in response to her disclosure of medical leave. The investigation could certainly be interpreted as an effort to interfere with Plaintiff's attempt to exercise her rights.

## CONCLUSION

For the foregoing reasons, Defendant NEXT's Motion to Dismiss should be denied.

Respectfully submitted,

*/s/ Patrick J. Hannon*

Patrick J. Hannon (BBO #664958)
Hartley Michon Robb Hannon LLP
101 Federal Street, Suite 1810
Boston, MA 02210
phannon@hmrhlaw.com
P: (617) 723-8000
F: (617) 447-2800
Attorneys for Plaintiff

Date: July 22, 2024

**CERTIFICATE OF SERVICE**

I, Patrick J. Hannon, counsel for Plaintiff, hereby certify that on July 22, 2024, I caused a copy of the within document to filed using the Court's CM/ECF system, which will send notification of such filing electronically to all registered participants.

*/s/ Patrick J. Hannon*
Patrick J. Hannon