UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JENNIFER LAWRENCE,

Plaintiff,

v.

NEXT INSURANCE, INC. and
GUY GOLDSTEIN,

Defendants.

Civil Action No: 1:19-CV-11605-WGY

**PLAINTIFF'S OPPOSITION TO**
**<u>DEFENDANT GUY GOLDSTEIN'S MOTION TO DISMISS</u>**

## INTRODUCTION

Defendant Guy Goldstein ("Mr. Goldstein" or "Defendant") is the main figure in this story. Plaintiff Jennifer Lawrence ("Ms. Lawrence" or "Plaintiff") initiated this action against Mr. Goldstein and NEXT, Inc. ("NEXT" or the "Company") – where he serves as founder and Chief Operating Officer ("CEO") – for claims based on gender and disability discrimination, tortious interference, and violations of the Paid Family and Medical Leave act ("PFML").[1] Despite his central role, Mr. Goldstein seeks to dismiss the claims against him for lack of personal jurisdiction and failure to state a claim. The Motion to Dismiss is meritless.[2]

## FACTS

The fast pertinent to this motion are largely set forth in Plaintiff's accompanying opposition to the motion to dismiss filed by NEXT. For sake of brevity, Plaintiff incorporates those facts herein by reference, and will address here only the facts touching upon personal jurisdiction.

At all relevant times, Ms. Lawrence has been a Massachusetts resident, employed in and working in Massachusetts. (Id. ¶¶ 1, 15). Her employment with NEXT began on March 1, 2022. (Id. ¶ 19). Defendant is one of NEXT's Co-founders and serves as its CEO. (Id. ¶ 11). NEXT maintains its principal place of business in Palo Alto, California, and also maintains an office in Waltham, Massachusetts. (Id. ¶ 2). Defendant works primarily in California, but also works from NEXT's office in Massachusetts. (Id. ¶ 3).

While Ms. Lawrence was initially recruited by NEXT's former Chief Financial Officer, Defendant played a critical role in securing her employment. Shortly before Ms. Lawrence's anticipated start date, Ms. Cheung informed her that she and another female executive, Sophya

[1] Plaintiff does not oppose dismissal of her FMLA claim and will voluntarily dismiss that claim.

[2] Defendant NEXT has concurrently filed a dismiss which is subject to a separate opposition brief.

Pogreb, were leaving NEXT. (Id. ¶ 16). The sudden and somewhat mysterious departure of two senior female executives concerned Ms. Lawrence. (Id. ¶ 18). Ms. Lawrence brought her reservations to Mr. Goldstein, who assured her that he found her past work experience "so impressive," and told her that it had taken NEXT over a year to identify a General Counsel candidate with her qualifications. (Id.). Mr. Goldstein's efforts were successful, as Plaintiff put aside her concerns and joined the company. (Id. ¶ 19).

Thereafter, Defendant was regularly engaged in managing and directing the work performed by Plaintiff in Massachusetts. (Id. ¶¶ 22, 27-35, 37). This included conducting weekly "1 on 1" meetings with Ms. Lawrence while she was in Massachusetts.[3] (Id.) As discussed below, it is Mr. Goldstein's conduct during those meetings, as well as a Zoom meeting on January 9, 2023, that form the essential nucleus of facts at issue in this case.

## ARGUMENT

## I. THE COURT HAS PERSONAL JURISDICTION OVER MR. GOLDSTEIN

When exercising jurisdiction over a nonresident defendant, the plaintiff must satisfy the Massachusetts long-arm statute and the Due Process Clause of the Fourteenth Amendment. C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014).[4] In applying those

---

[3] While the Complaint does not expressly allege that Plaintiff was in Massachusetts during these meetings, that is a fair inference that should be drawn based on the allegation that she was working remotely from Massachusetts. Should the Court disagree, Plaintiff respectfully requests leave to amend her complaint for the sole purpose of clarifying that she was in Massachusetts during these meetings.

[4] "When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing…the 'prima facie' standard governs its determination." United States v. Swiss Am. Bank, Ltd. 274 F.3d 610, 618 (1st Cir. 2001). Therefore, plaintiff must proffer "evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." A. Corp. v. All American Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016) (internal quotations omitted). The Court must accept "specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's

standards to a corporate officer, the forum related activities of the organization cannot simply be imputed to the corporate agent. Johnson Creative Arts, Inc. v. Wool Masters, Inc., 573 F. Supp. 1106, 1111 (D. Mass. 1983) ("jurisdiction over the individual officers of a corporation may not be based on jurisdiction over the corporation"). Instead, courts must look to the forum related activities of the particular officer.

Importantly, however, forum related activities of a corporate agent are not disregarded from this analysis when they are acting in the capacity of an agent. Rissman Hendricks & Oliverio, LLP v. MIV Therapeutics, Inc., 901 F. Supp. 2d 255, 263 (D. Mass. 2012) ("status as [an] employee[] does not somehow insulate [that individual] from jurisdiction.") (internal quotations omitted). Accordingly, all forum related activities of the officer must be considered, even those taken by the officer on behalf of the corporation. Id.

In this case, for the reasons set forth below the Court has personal jurisdiction over Mr. Goldstein not merely because he is the CEO of the Company, but because of his own transactions and contacts with Massachusetts. In fact, it is Mr. Goldstein's transactions and contacts with Massachusetts that are central to Plaintiff's claims in this action.

### A. The Court Has Jurisdiction Under Massachusetts' Long-Arm Statute

Plaintiff satisfies the requirements of the Massachusetts long-arm statute, which permits jurisdiction over non-resident defendants who have "act[ed] directly or by an agent, as to a cause of action…arising from the person's…transacting any business in this commonwealth." G.L. c. 223A, § 3(a). As such, plaintiff must demonstrate that (1) the defendant transacted business in

jurisdictional claim…[and] then add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).

Massachusetts, and (2) plaintiff's claim arose from defendant's transaction of business. Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994).

For the first prong, "although an isolated (and minor) transaction with a Massachusetts resident may be insufficient, generally the purposeful and successful solicitation of business from residents of [Massachusetts], by a defendant or its agent, will suffice to satisfy this requirement." Tatro, 416 Mass. at 767. The "transacting any business" clause is "broadly" construed, id., and the Court must consider whether Defendant "attempted to participate in the commonwealth's economic life." Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015) (internal quotations omitted). This requirement is met by "purposeful and continuous contacts with a Massachusetts resident in the course of business." Hongyu Luo v. Tao Ceramics Corp., No. 13-CV-5280-F, 2014 WL 3048679, at *2 (Mass. Super. Ct. Apr. 10, 2014). For the second prong, to determine whether a claim arises from the transaction of business, courts determine whether the transacted business was a "but for" cause of the alleged harm. Cossart, 804 F.3d at 18.

Here, Mr. Goldstein – as CEO and founder of a company that established an office in Massachusetts – transacted business in Massachusetts through his frequent communications with Ms. Lawrence who was working remotely in Massachusetts. These contacts were "purposeful and continuous," as they occurred on an approximately weekly basis. See Hongyu Luo, 2014 WL 3048679, at *2 (out-of-state CEO's contacts with plaintiff employee in Massachusetts were "purposeful, repetitive, and long running," as the CEO spoke with plaintiff on a weekly basis about sales for 15 months, which "alone is enough to satisfy" the Massachusetts' long-arm statute requirement that she transacted any business in the state); see also Sonesta Int'l Hotels v. Central Fla. Invs., Inc., 47 Mass. App. Ct. 154, 161 (1999) (finding personal jurisdiction where "there were

numerous telephone and written communications sent from the defendant in Florida to the plaintiff in Massachusetts over the course of time.”)).

Further, Ms. Lawrence’s claims arise directly out of these communications with Mr. Goldstein. With regard to her gender discrimination claims, in a “1 on 1” meeting in mid-May 2022, Mr. Goldstein essentially ordered Ms. Lawrence to make up with another female colleague in paternalistic fashion. (Compl. ¶ 22). In another “1 on 1” meeting in July 2022, Ms. Lawrence complained to Mr. Goldstein about Mr. Zhang’s condescending and dismissive behavior toward women, and Mr. Goldstein dismissed those concerns and proceeded to discuss how Ms. Lawrence was “mean,” which led Ms. Lawrence to express concern to him that her gender may be a factor in her treatment. (Id. ¶¶ 27-30). In another meeting, Ms. Lawrence told Mr. Goldstein that a female member of her team had complained about demeaning behavior from Mr. Fuks Leichtag and expressed her fear that female leaders at NEXT were intimidated to “not have a voice.” (Id. ¶¶ 32-33). With regard to her disability discrimination/PFML claims, in the January 5, 2023 1-on-1 meeting, Ms. Lawrence informed Mr. Goldstein about her need for medical leave. (Id. ¶¶ 39-40). Then a few days later, Mr. Goldstein informed Ms. Lawrence of her termination in a Zoom meeting, in which he also pointed to her “bullying” and creation of a “hostile work environment.” (Id. ¶ 43). These communications are the “but for” cause of the harm alleged by Ms. Lawrence. As Mr. Goldstein transacted business in the state and Plaintiff’s claims arise from those transactions, Mr. Goldstein falls under the jurisdiction of the state’s long-arm statute.

**B. Jurisdiction Comports With Due Process**

Jurisdiction over a nonresident must also be consistent with due process such that “the maintenance of the suit does not offend traditional notions of fair play and substantial justice.” Int’l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). In order for specific jurisdiction to exist,

"courts consider (1) whether the claim 'directly arise[s] out of, or relate[s] to, the defendant's forum state activities; (2) whether the defendant's in-state contacts 'represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable; and (3) whether the exercise of jurisdiction is reasonable." C.W. Downer & Co. v. Bioriginal Food & Sci. Corp, 771 F.3d 59, 65 (1st Cir. 2014). Each prong is satisfied here.

**1. Relatedness**

The "relatedness" prong of the due process analysis concerns whether the claims "directly arise[] out of, or relate[] to, the defendant's forum-state activities." Astro-Med, Inc. v. Nihon Kohden Am., Inc. 591 F.3d 1, 9 (1st Cir. 2009) (internal quotations omitted). It "is similar to the 'arises from' requirement of the Long-Arm statute." Hongyu Luo, 2014 WL 3048679 at *3. Plaintiff "must show a demonstrable nexus between [her] claims and [Defendant's] forum-based activities, such…[that] the litigation itself is founded directly on those activities." Adelson v. Hananel, 652 F.3d 75, 81 (1st Cir. 2011) (internal quotations omitted). "[A] defendant need not be physically present in the forum state to cause injury (and thus activity for jurisdictional purposes) in the forum state." Astro-Med, 591 F.3d at 10. It is a "flexible, relaxed standard." Id. at 9 (internal quotations omitted). The standard "falls between proximate and 'but for' causation, with foreseeability shaping most relatedness determinations." Micheli v. Techtronic Indus., No. 11-10503, 2012 WL 6087383, at *9 (D. Mass. Mar. 1, 2013) (citing Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 715-16 (1st Cir. 1996)).

Here, as set forth in Section I(A) above, Plaintiff's claims directly arise out of or relate to Mr. Goldstein's frequent communications with Ms. Lawrence who was working remotely in Massachusetts. These communications, which included weekly "1 on 1" meetings, form the basis

of all of Plaintiff's claims as Ms. Lawrence raised her concerns about gender discrimination during these meetings, she later announced her need to take medical leave during another meeting, and finally Mr. Goldstein personally terminated her over a Zoom meeting. The "relatedness" prong is satisfied here.

### 2. Purposeful Availment

Plaintiff also purposely availed himself of the forum. This requirement "ensures that jurisdiction is not premised on 'random, isolated, or fortuitous' contacts with the forum state." Katz v. Spiniello Cos., 244 F. Supp. 3d 237, 245 (D. Mass. 2017) (quoting Weinberg v. Grand circle Travel, LLC, 891 F. Supp. 2d 228, 246 (D. Mass. 2012)). It focuses "on acts 'by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). "The cornerstones of this inquiry are voluntariness and foreseeability." C.W. Downer, 771 F.3d at 66. This means that a defendant could "reasonably anticipate being haled into court" in the forum state. Adelson v. Hananel, 510 F.3d 43, 50 (1st Cir. 2007) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Mr. Goldstein is the CEO and founder of the Company that opened an office in Massachusetts. (Compl. ¶¶ 2, 11). Although Mr. Goldstein, in his declaration, claims that he only visited the Waltham office once during Ms. Lawrence's employment with the Company (Goldstein Decl. ¶ 5), that does not change the fact that he should expect to travel to Massachusetts because that is where his Company purposely decided to open an office. Mr. Goldstein was directly involved in securing Ms. Lawrence's employment for NEXT, and thereafter regularly managed her work in Massachusetts through weekly "1 on 1" meetings.

Given these facts, it is beyond serious dispute that Mr. Goldstein should have foreseen that he could be hailed into court in Massachusetts. See Yankee Grp., 678 F. Supp. 20 at 23 (finding

sufficient minimum contacts where Japan-based president of Japanese corporation visited Massachusetts two-to-three times a year for several years to conduct business with plaintiff, and also spoke on the phone with plaintiff officials and sent letters); Rissman Hendricks & Oliverio, LLP v. MIV Therapeutics Inc., 901 F. Supp. 2d 255, 265 (D. Mass. 2012) (president and CEO of corporation purposely availed himself of Massachusetts even though he was never physically present in the state where he repeatedly sought legal advice for the company from a Massachusetts law firm).

### 3. **Reasonableness**

Plaintiff satisfies the reasonableness prong as well. Under this prong, courts consider "whether the exercise of jurisdiction over [the defendant] in the circumstances of this case would, holistically viewed, offend traditional notes of 'fair play and substantial justice.'" Pritzker v. Yari, 42 F.3d 53, 63 (1st Cir. 1994). Courts consider the following factors:

> (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Pritzker, 42 F.3d at 63-64. On the first factor, because "staging a defense in a foreign jurisdiction is almost always inconvenient and/or costly, … this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." Id. at 64. "[S]imply having to defend oneself in a forum other than one's home is not enough." Old United Cas. Co. v. Flowers Boatworks, No. 15-cv-43-DBH, 2016 WL 1948873, at *8 (D. Me. May 3, 2016). Defendant has not alleged any "special" or "unusual" burden here. To the contrary, he is the CEO of a company with offices in Massachusetts. See Cossart v. United Excel Corp., 804 F.3d at 21 (explaining that president of Kansas corporation, which hired a Massachusetts resident and registered a sales office in the state

solely to facilitate that employee's work, was unable to demonstrate any special or unusual burden with litigating in the state).

Massachusetts also has a significant interest in adjudicating the dispute, as Plaintiff is bringing discrimination, tortious interference and PFML claims under Massachusetts law, and Massachusetts has an interest in ensuring that those who purposely transact business in the state – including the CEO of a company that opened up an office in Massachusetts –comply with state laws. See Hongyu Luo, 2014 WL 3048679, at *4. It is also more efficient to litigate the claims against Mr. Goldstein and NEXT in the same action as the facts will be identical for both parties. All of Plaintiff's claims against NEXT (disability/handicap discrimination, sex discrimination, retaliation, and violation of M.G.L. c. 175M) stem from the actions of Mr. Goldstein. Even if Mr. Goldstein were not a named defendant in this action, he would still be a critical witness in this case, who would need to be deposed and called into court in Massachusetts to testify at trial.

As the relatedness, purposeful availment, and reasonableness factors are satisfied, the Court has specific jurisdiction over Mr. Goldstein.

## II. PLAINTIFF HAS ADEQUATELY PLED HER CLAIMS AGAINST MR. GOLDSTEIN

When analyzing a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim, the Court must "assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007). The Complaint need only "set forth minimal facts as to who did what to whom, when, where, and why—although why, when why means the actor's state of mind, can be averred generally." Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004). Plaintiff must allege "a plausible entitlement to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 559 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks

for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556)). "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 13 (1st Cir. 2011).

### A. Plaintiff's M.G.L. c. 151B Retaliation Claim is Adequately Plead

Plaintiff brings a claim for retaliation against Mr. Goldstein under M.G.L c. 151B.[5] To establish a prima facie case of retaliation, Plaintiff must satisfy three elements: (1) that she engaged in protected conduct, (2) that she suffered some adverse action, and (3) that a causal connection existed between the protected conduct and the adverse action. Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 406 (2016). Defendant only challenges the third element, claiming that there is no causal connection between the protected conduct and the adverse action.

Plaintiff first engaged in protected conduct during a July 2022 meeting with Mr. Goldstein, when she expressed concern that her gender might be causing negative feedback regarding her performance and that she should not be held to a different standard than her male colleagues. See Jacquet v. City of Somerville, No. CV 18-10167, 2020 WL 3545535, at *4 (D. Mass June. 30, 2020) (quoting Fantini v. Salem State Coll., 557 F.3d 22, 32 (1st Cir. 2009) ("Protected activity includes…informal protests of discriminatory employment practices, including making complaints to management….")). In response, Mr. Goldstein said it had "nothing to do with role

[5] Defendant only challenges the M.G.L. c. 151B retaliation claim on the basis of gender discrimination. As Defendant does not contest Plaintiff's retaliation claim based on disability discrimination, that claim should be deemed adequately pled. To the extent that any further argument on that claim is deemed necessary here, Plaintiff incorporates herein the arguments advanced in her accompanying opposition to NEXT's motion to dismiss.

or gender," but said it was important that she be "liked" at the Company. (Compl. ¶ 30). Plaintiff continued to express her concerns to Mr. Goldstein in future meetings, including when she told him that women leaders at NEXT were intimidated to "not have a voice." (Compl. ¶ 32).

If the most recent version of Defendant's story is to be believed, and it commenced an "investigation" into Plaintiff's conduct "months" prior to her termination (Compl. ¶ 44), that would plausibly suggest an extremely close temporal with Plaintiff's protected activity. That temporal proximity is enough to meet Plaintiff's pleading burden at this stage. DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2009) ("temporal proximity alone can suffice to meet the relatively light burden of establishing a prima facie case of retaliation") (internal quotations omitted); Collazo v. Bristol-Myers Squibb Mfg., Inc., 617 F.3d 39, 49-50 (1st Cir. 2010) (11 days between protected activity and termination sufficient to establish *prima facie* case of retaliation); Polo-Echevarria v. Centro Medico del Turabo, Inc., 949 F. Supp. 2d 332 (D.P.R. 2013) (denying motion to dismiss because plaintiff engaged in protected activity and was shortly thereafter terminated, and explaining that "[d]epending on the particular set of facts at hand, temporal proximity alone can suffice to meet the relatively light burden of establishing a prima facie case of retaliation.") (internal quotations omitted).

Alternatively, even if the investigation did not occur until January 2023, the fact that approximately six months lapsed between the time of the first protected activity and the termination/investigation does not negate causation. See Garayalde-Rijos v. Mun. of Carolina, 747 F.3d 15, 25-26 (1st Cir. 2014) (finding that district court erred in dismissing retaliation claim based solely on the fact that five months elapsed between the protected conduct and adverse employment action). Indeed, "a plaintiff can still succeed on a retaliation claim despite a lack of proximity if the record supports 'a pattern of antagonism in the intervening period.'" Soni v. Wespiser, 404 F.

Supp. 3d 323, 333 (D. Mass. 2019); see also Che, 342 F.3d at 38-39 (although demotion occurred 11 months after filing of discrimination claim, there was other evidence of discriminatory and disparate treatment in the time between the protected activity and adverse employment action that demonstrated causal connection."). The facts plausibly suggest such a scenario here, where after the initial protected activity, Mr. Goldstein consistently held Ms. Lawrence to a different standard than her male colleagues, criticizing her for her alleged abusive behavior while disregarding the behavior of other male executives.

Lastly, putting temporal proximity aside, the Complaint contains a variety of other evidence that plausibly suggests the reason given for Ms. Lawrence's termination was a pretext for discrimination. Adamson v. Walgreens Co., 750 F.3d 73, 79 (1st Cir. 2014) ("Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.") (quoting Gómez–González v. Rural Opportunities Inc., 626 F.3d 654, 662–63 (1st Cir. 2010)). Such evidence includes:

- Mr. Goldstein's initial claim that his "emergency" 360 was conducted immediately after Plaintiff disclosed the deterioration in her health; (Compl. ¶ 43)
- Defendant's efforts to subsequently change his story, claiming that an "investigation" had been conducted months prior; (Id. ¶ 44)
- The implausibility of Defendant's contention that an "investigation" had been conducted months prior, despite the extensive positive feedback that Mr. Goldstein provided Plaintiff on January 5, 2023; (Id. ¶ 37)
- The wholly subjective reason given by Defendant for Plaintiff's termination, for which Defendant refused to provide any explanation or examples. (Id. ¶ 43)

That alone is sufficient to make the "small showing" required at this stage, particularly because a showing of pretext is a legally sufficient basis to infer unlawful animus. Bulwer, 473 Mass. at 682–83 (noting that Massachusetts is a "pretext only" jurisdiction).

The motion to dismiss should be denied.

### B. Plaintiff's M.G.L. c. 151B Interference Claim is Adequately Pled

Unlike its federal counterpart, Chapter 151B allows for corporate agents to be held personally liable for discriminatory acts. Beaupre v. Cliff Smith & Assocs., 50 Mass. App. Ct. 480, 490–92 (2000). Such a claim against an individual is typically brought under Section 4(4A) of Chapter 151B, which makes it unlawful to "coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter." M.G.L. c. 151B, 4(4A). See McLaughlin v. City of Lowell, 84 Mass. App. Ct. 45, 74, 992 (2013) (explaining that "§ 4(4A) is best understood as a device through which an individual falling outside the scope of the definition of 'employer' may otherwise be liable for conduct which the antidiscrimination statute aims to prevent.").

To state such a claim, plaintiff must plausibly allege that defendant (1) [] had the authority to or the duty to act on behalf of the employer; (2) their action or failure to act implicated rights under the statute; and (3) there is evidence articulated by the complainant that the action or failure to act was in deliberate disregard of the complainant's protected rights allowing the inference to be drawn that there was an intent to discriminate or interfere with the complainant's exercise of [her] rights." Furtado v. Standard Parking Corp., 820 F. Supp. 2d 261, 278 (D. Mass. 2011).

Here, there is no question that as CEO, Mr. Goldstein had authority to act on behalf of the Company. Under that authority, he demonstrated a "deliberate disregard" of Ms. Lawrence's rights under the statute to be free from discrimination on the basis of her gender and handicap. Ms.

Lawrence made it clear to Mr. Goldstein during several conversations that she felt she – and other women at the Company – were the victims of gender discrimination. Instead of addressing those concerns, Mr. Goldstein ignored them and criticized Ms. Lawrence's conduct instead. After Ms. Lawrence claimed that she was being treated differently from male colleagues, she was told it had "nothing to do with role or gender," and it was important that she be "liked" at the Company. (Compl. ¶ 30). Mr. Goldstein's behavior toward Ms. Lawrence did not change, and it culminated it her termination for allegedly being a "bully." (Id. ¶ 43 These were all efforts to "coerce, intimidate, threaten, or interfere" with Ms. Lawrence's exercise of her rights.

Mr. Goldstein similarly interfered with Ms. Lawrence's statutory right to be free from discrimination on the basis of handicap. At the January 5, 2023 meeting, Ms. Lawrence disclosed that her condition had deteriorated, and that she needed to undergo a major surgical procedure. (Id. ¶¶ 39-40). Despite telling Ms. Lawrence that "we would never fire you for health reasons," (which demonstrated his knowledge that doing so would be unlawful) he did exactly that just four days later. (Id. ¶¶ 40-41).

While Defendant argues that there is insufficient evidence to plausibly suggest a causal nexus, that contention borders on frivolous. To begin, Ms. Lawrence was fired ***four days*** after disclosing that her health had significantly deteriorated and now required a major surgery—possibly to be followed by additional surgeries and procedures. (Compl. ¶¶ 39-41). DEFENDANT's assertion that this staggering temporal proximity is "not enough" to survive a motion to dismiss is flatly wrong. See Ortiz v. Fed. Bureau of Prisons, 290 F. Supp. 3d 96, 107 (D. Mass. 2017) (allegation that adverse action was taken just five days after protected activity was sufficient to plausibly suggest causation at motion to dismiss stage). Indeed, it is well settled that

"Temporal proximity can create an inference of causation." Soni v. Wespiser, 404 F. Supp. 3d 323, 332 (D. Mass. 2019).

The sole case relied upon by DEFENDANT, Woldemariam v. Pilgrim Parking, No. MICV2008-00176, 2008 WL 650412 (Mass. Sup. Ct. Feb. 8, 2008), is not to the contrary. That was a summary judgment decision and did not address Rule 12's plausibility standard. Moreover, the Court in that case actually relied on temporal proximity for purposes of holding that the plaintiff had presented sufficient evidence to meet the prima facie case of handicap discrimination. Id. at *5 & 7.

In any event, the facts plausibly suggesting DEFENDANT's unlawful motive are not limited to temporal proximity. As discussed above, there is other evidence of the "weaknesses, implausibilities, inconsistencies, incoherencies, [and] contradictions" in Defendant's story, all of which provide evidence of pretext.

Perhaps most significant, however, is Mr. Goldstein's spontaneous declaration that "we would never fire you for health reasons." Contrary to Defendant's assertion otherwise, this statement should not be taken at face value, or otherwise assumed to evince a lack of discriminatory animus. Viewed in the light most favorable to Plaintiff, this was a Freudian slip-like statement. Specifically, it reflected that—the moment Mr. Goldstein learned of Plaintiff's deteriorated health and need for major surgery—his internal thought process immediately turned to the desirability of terminating Plaintiff's employment. The statement further reflected Mr. Goldstein's knowledge that he could not legally terminate Plaintiff on that basis, and would need to find some pretext for doing so—such as an "emergency" 360 review.

Lastly, it bears mention that Defendant's knowledge of Plaintiff's cancer diagnosis at the time of her hire is much different from the information Defendant received about her condition in

January 2023. Specifically, Defendant learned that the prior surgeries had not been entirely successful, and that she would now need to take medical leave to undergo an extensive surgical procedure (removing her ovaries and fallopian tubes), which might be followed by additional surgeries and procedures may also be required after that. (Compl. ¶ 39-40). This deterioration in her condition plausibly suggested a much different state of affairs—one in which treatment was not working and the course of Plaintiff's illness was headed in an increasingly negative direction.

For all of these reasons, the facts plausibly suggest an entitlement to relief on these claims, and the motion to dismiss must be denied.

### C. Plaintiff's Tortious Interference Claim is Adequately Plead

Proof of intentional interference with contractual relations requires (1) the existence of a contract or business relationship which contemplated economic benefit between Plaintiff and NEXT; (2) Mr. Goldstein's knowledge of a contract or business relationship; (3) Mr. Goldstein's intentional interference with the contract or business relationship for an improper purpose or by an improper means; and (4) damages. Swanset Dev. Corp. v. Taunton, 423 Mass. 390, 397 (1996).[6] In an employer-employee context, Plaintiff must also show Defendant held "actual malice," meaning "a spiteful, malignant purpose, unrelated to the legitimate corporate interest." Psy-Ed Corp. v. Klein, 459 Mass. 697, 716 (2011) (internal quotations omitted). So long as Plaintiff can demonstrate that Defendant's malice was the controlling factor in her discharge, she need not show it was the only factor. Tuli v. Brigham & Women's Hosp., 656 F.3d 33, 43 (1st Cir. 2011). It is

[6] Courts have repeatedly held that Chapter 151B does not preempt common-law remedies, including the tort of intentional interference with contractual relations, that pre-date Chapter 151B. Weber v. Cmty. Teamwork, Inc., 434 Mass. 761, 781 n.41 (2001) (citing Comey v. Hill, 387 Mass. 11, 20 (1982) ("The statute broadens existing remedies rather than requiring resort to it as exclusive of all other remedies.").

well settled that unlawful discriminatory or retaliatory motive, which Plaintiff demonstrates for the reasons described below, qualifies as a malicious purpose to sustain a claim for tortious interference. See, e.g., Comey, 387 Mass. at 19 (intent to discriminate based on age). However, nothing in the elements of a tortious interference claim requires a plaintiff to prove discriminatory or retaliatory intent within the technical meaning of Chapter 151B in order to prove a "spiteful, malignant purpose, unrelated to the legitimate corporate interest." See, e.g., Draghetti v. Chmielewski, 416 Mass. 808, 817 (1994) (jury could conclude that evidence showed employment decision was based on "retaliation **or ill will** toward Draghetti, rather than the good of the police department.") (emphasis added); Weber, 434 Mass. at 782 (2001) ("Tortious interference by a corporate officer requires unjustified and malicious interference with an employment relationship, a potentially different concept than status-based discriminatory intent.") (quoting Ferguson v. Michael Foods, Inc., 74 F. Supp. 2d 862, 873 (D. Minn. 1999)).

Here, the facts plausibly suggest that Mr. Goldstein initiated a sham "360 review" of Ms. Lawrence. The facts further plausibly suggest that this "investigation" either occurred sometime in the second half of 2023 or literally the day after Ms. Lawrence announced her medical diagnosis and desire to take medical leave. (Compl. ¶¶ 43-44). Either way, the timing suggests that it was the result of a discriminatory or retaliatory motive by Mr. Goldstein. By doing so, Mr. Goldstein tortiously interfered with Ms. Lawrence's employment relationship with NEXT.[7]

---

[7] Defendant cites Tech Plus, Inc. v. Ansel, 59 Mass. App. Ct. 12, 18 (2003) for the proposition that a plaintiff cannot recover on a tortious interference claim without any showing of pecuniary loss, but in that case plaintiff was unable to establish any pecuniary loss at trial as he received all due commissions. This is a motion to dismiss and plaintiff clearly suffered pecuniary loss including, but not limited to, lost compensation.

### D. Plaintiff's PFML Claims are Adequately Plead

Plaintiff's seventh cause of action is for interference and retaliation under the PFML, M.G.L. c. 175M. The statute provides that "[m]edical leave shall be available to any covered individual with a serious health condition that makes the covered individual unable to perform the functions of the covered individual's position." Id., § 2(a)(2). It also makes it unlawful for "any employer to retaliate by discharging, firing, suspending, expelling, disciplining…or in any other manner discriminating against an employee for exercising any right to which such employee is entitled under this chapter or with the purpose of interfering with the exercise of any right to which such employee is entitled under this chapter." Id., § 9(a).

Defendant claims that there is no individual liability under the PMFL because Mr. Goldstein is not an "employer" under the definition in Section 1 of the statute, which states that "Employer" shall have the same meaning as provided in M.G.L. c. 151A(1)(i). Because that statute defines "Employer" as "any employing unit subject to this chapter" (M.G.L. c. 151A(1)(i)), Defendant contends that an "employing unit" cannot possibly mean an individual. However, Defendant ignores that the same section of the statute defines "employing unit" to mean "any **individual** or type of organization…." M.G.L. c. 151A(1)(j) (emphasis provided).[8]

Defendant also contends that the PMFL claim fails because it does not plausibly demonstrate that Ms. Lawerence's termination had anything to do with her exercise or attempted exercise of her rights. As Defendant only references its arguments as to why the FMLA claim

[8] While the language in the statute is clear, it should also be noted that in the context of the FMLA, "courts within the First Circuit have adopted the majority viewpoint that individual supervisors can be liable for FMLA violations." See e.g., Rousseau v. Clark Uni., No. 22-cv-40118, 2023 WL 3435570, at *2 (D. Mass. May 12, 2023) (collecting cases) (denying motion to dismiss).There is no reason to think the PMFL and FMLA should be interpreted differently as to individual liability.

should have been dismissed, Plaintiff assumes Defendant is relying on the argument that temporal proximity, by itself, is insufficient for the claim to survive a motion to dismiss. But even if the FMLA standard would apply, which is not clear, that is not the standard under the FMLA. See Hodgens v. General Dynamics Corp. 144 F.3d 151, 168, 170 (1st Cir. 1988) (in FMLA case, stating that, "close temporal proximity between two events may give rise to an inference of causal connection"); Rhoades v. Camden Nat. Corp., 575 F. Supp. 2d 260, 262 (D. Maine) (in FMLA case, explaining that "under clear First Circuit precedent, this close temporal proximity can be sufficient to sustain the Plaintiff's *prima facie* burden in her retaliation claim."). All of the arguments discussed above with respect to causal nexus are of equal force here, and the motion to dismiss should be denied.

## CONCLUSION

For the foregoing reasons, Defendant Goldstein's Motion to Dismiss should be denied.

Respectfully submitted,

*/s/ Patrick J. Hannon*

Patrick J. Hannon (BBO #664958)
Hartley Michon Robb Hannon LLP
101 Federal Street, Suite 1810
Boston, MA 02210
phannon@hmrhlaw.com
P: (617) 723-8000
F: (617) 447-2800
Attorneys for Plaintiff

Date: July 22, 2024