UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                      )
JENNIFER LAWRENCE,                    )
                    Plaintiff,        )
                                      )
          v.                          )    CIVIL ACTION
                                      )    NO. 24-11285-WGY
NEXT INSURANCE, INC., and             )
GUY GOLDSTEIN,                        )
                                      )
                    Defendants.       )
_____)

YOUNG, D.J.                                March 13, 2025

**MEMORANDUM AND ORDER**

## I.   INTRODUCTION AND PROCEDURAL HISTORY

The plaintiff Jennifer Lawrence ("Lawrence") was hired to
serve as General Counsel for Next Insurance, Inc. ("Next"), and
commenced employment on March 1, 2022.  Mot. Amend Compl., Ex.
A, Proposed Am. Compl. ("PAC") ¶¶ 10, 19, ECF No. 48-1; Mot.
Amend Compl., Ex. C, Decl. Jennifer Lawrence ("Lawrence Decl.")
¶ 3, ECF No. 48-3.  Lawrence was fired on January 9, 2023, over
Zoom, by Next's CEO Guy Goldstein ("Goldstein").  PAC ¶¶ 41-42.
Prior to her termination, Lawrence met regularly with Goldstein
in weekly one-on-one meetings, also via Zoom.  PAC ¶ 20;
Lawrence Decl. ¶ 4.  Throughout her employment, and as was
anticipated in her initial offer letter, Lawrence resided in
Massachusetts.  PAC ¶¶ 19-20; Lawrence Decl. ¶ 2-3.  Goldstein

is a resident of California.  PAC ¶ 3; Decl. Goldstein Supp. Opp'n Mot. Amend ("Goldstein Decl.") ¶ 6, ECF No. 50.  He visited Next's office in Waltham, Massachusetts once during Lawrence's employment, but did not meet with Lawrence at the time.  Goldstein Decl. ¶ 5.  Goldstein conducted the virtual meetings at issue here from his home and from Next's California office, both in Palo Alto.  Id.[1]

Lawrence filed suit against both Next and Goldstein on May 14, 2024, claiming that she was terminated because of her disability and her gender.  See generally PAC.  Against Goldstein, Lawrence alleged retaliation and interference under Massachusetts General Laws, ch. 151B ("Chapter 151B"), tortious interference with advantageous business relationships, and violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, and the Massachusetts Family and Medical Leave Act ("PFML"), Mass. Gen. Laws ch. 175M.  PAC ¶¶ 55-71. Goldstein moved to dismiss all counts against him both for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Goldstein Mot. Dismiss, ECF No. 11.

---

[1]  Goldstein clarifies that Next's Waltham office "is an office leased by a subsidiary of Next," of which Goldstein is not an officer.  Goldstein Decl. ¶ 8.  He does, however, refer to this office as "Next's office in Massachusetts."  Id. ¶ 5

At a hearing held on October 23, 2024, this Court ALLOWED Goldstein's motion to dismiss Lawrence's Chapter 151B interference claim, her FMLA claim, and her PFML claim against him, and clarified that Lawrence's gender discrimination claims were not supported by the present record.  <u>See</u> Tr. Mot. Dismiss Hr'g 16-17, ECF No. 39.  The Court took Lawrence's Chapter 151B retaliation and common law tortious interference claims against Goldstein under advisement, pending resolution of the issue of personal jurisdiction over Goldstein, which it also took under advisement.  <u>See</u> Elec. Clerk's Notes, ECF No. 41.  The Court also gave Lawrence leave to file a motion for leave to file an amended complaint elaborating on her gender-based discrimination claims, and later denied the motion as futile.  Pl.'s Mot. Am. Compl., ECF No. 44; Elec. Order, ECF No. 47.

On November 20, 2024, this Court allowed Goldstein's motion to dismiss for lack of personal jurisdiction because Lawrence had not proffered evidence sufficient to make her jurisdictional showing, but did so without prejudice and with leave to file a motion for leave to amend the complaint for a second time.  <u>See</u> Order, ECF No. 43.  Lawrence filed her motion for leave to amend the complaint along with a proposed amended complaint on December 20, 2024.  Pl.'s Mot. Amend Compl. ("Lawrence Mot. Amend."), ECF No. 48; Lawrence Decl.  Goldstein opposed this

motion on the ground that it was futile.  Opp'n Mot. Amend

Compl. ("Goldstein's Opp'n Mot. Amend. Compl."), ECF No. 49.

For the reasons stated below, Lawrence's motion for leave

to amend, ECF No. 48, is ALLOWED.  The Court also proceeds to

rule on Goldstein's motions to dismiss the original complaint as

applied to the amended complaint, construing them as arguments

in opposition to the motion for leave to amend.  So construed,

those motions, ECF No. 11, are also DENIED.  In the interests of

judicial economy and efficiency, this Court presumes that the

parties would advance the same arguments on these motions were

they re-submitted with respect to the amended complaint, which

alleges some additional facts relevant to jurisdiction but does

not change the substance of Lawrence's claims.  The parties

briefed the jurisdictional issue for the second time for this

motion, fully briefed the motion to dismiss pursuant to Rule

12(b)(6), and argued both motions at the October 2024 hearing.

See Lawrence's Mot. Amend Compl.; Goldstein's Opp'n Mot. Amend

Compl.; Mem. Law Supp. Def. Goldstein's Mot. Dismiss

("Goldstein's Mem. Mot. Dismiss"), ECF No. 13; Pl.'s Opp'n Def.

Goldstein's Mot. Dismiss ("Lawrence's Opp'n Mot. Dismiss"), ECF

No. 22; Def. Goldstein's Reply Mem. Supp. Mot. Dismiss

("Goldstein's Reply Mot. Dismiss"), ECF No. 27.  To avoid a

second, duplicative round of motion practice, the Court here

addresses the parties' arguments on these motions, while

[4]

allowing Lawrence's motion to amend under Federal Rule of Civil Procedure 15(a)(2).  See infra section III.A.

The Court rules that it has personal jurisdiction over Goldstein, and thus, to the extent that it remains, DENIES Goldstein's motion to dismiss under Rule 12(b)(2).  This Court also DENIES Goldstein's motion to dismiss Lawrence's claims for Chapter 151B, disability-based retaliation and tortious interference under Rule 12(b)(6), to the extent that it remains, because, as explained below, Lawrence has alleged sufficient facts to support plausible claims on both counts.  Accordingly, Lawrence's motion to amend is not futile either for lack of jurisdiction or for failure to state a claim.

This Court has subject matter jurisdiction over the claims against Next and Goldstein that arise under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, Title VII, 42 U.S.C. §§ 2000e-2000e-17, and the FMLA pursuant to 28 U.S.C. § 1331, and exercises supplemental jurisdiction over Lawrence's other claims because they arise from the same common nucleus of operative fact as the claims arising under federal law, pursuant to 28 U.S.C. § 1367.

## II.  Factual Background[2]

Next is a Delaware corporation with its principal place of business in Palo Alto, California, and a Massachusetts office in Waltham, Massachusetts.  PAC ¶ 2.[3]  Goldstein, Next's Chief Executive Officer, primarily works and resides in California, and recalls visiting the Waltham office only once during Lawrence's employment, at which time he did not meet with Lawrence.  Id. ¶ 3; Goldstein Decl. ¶ 5.[4]  Lawrence, who has resided in Massachusetts since approximately 1994, PAC ¶ 1; Lawrence Decl. ¶ 2, was hired by Next to serve as its General

---

[2] These facts are recited as alleged by Lawrence, and, to the extent that his factual allegations are unopposed, by Goldstein.  "We derive our recitation of the case's facts from [the plaintiff's] properly documented evidentiary proffers and from those portions of the defendants' proffers that are undisputed."  Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 2 (1st Cir. 2016).

[3] As explained supra note 1, Goldstein clarifies that Next's Waltham office "is an office leased by a subsidiary of Next," of which Goldstein is not an officer.  Goldstein Decl. ¶ 8.

[4] Lawrence initially alleged that Goldstein "also works from NEXT's office in Waltham, Massachusetts," but did not offer any facts in support of this claim in her affidavit.  PAC ¶ 3; Lawrence Decl.  Goldstein declared, unopposed, that he only visited the Waltham office once during Lawrence's tenure, and does not regularly work from there.  Goldstein Decl. ¶ 5.  This Court may consider undisputed facts offered by the defendant in deciding on the motion to dismiss for lack of personal jurisdiction.  Kuan Chen v. U.S. Sports Acad., Inc., 956 F.3d 45, 54 (1st Cir. 2020).  Because Lawrence has not alleged any facts supporting the proposition that Goldstein worked more than once from Waltham during her employment, it is assumed here that Goldstein's account of his relationship with the Waltham office is accurate.

Counsel and commenced employment on March 1, 2022, PAC ¶¶ 10, 19; Lawrence Decl. ¶ 3.  Per the terms of Lawrence's initial offer letter, she was to work remotely from Massachusetts, and she was in Massachusetts for "most, if not all, of [the] meetings and conversations with Goldstein that are identified in [her] court complaint," including the January 2023 conversations that culminated in her firing.  PAC ¶ 15; Lawrence Decl. ¶ 5.

Lawrence was primarily recruited by Next's then-Chief Financial Officer Michelle Cheung ("Cheung"), to whom, according to Lawrence's offer letter, Lawrence was to report once hired, and who was to be named Chief Corporate Officer.  PAC ¶¶ 12-15. During these recruitment discussions, Lawrence shared with Cheung that she had been diagnosed with cancer and might need to delay her start date due to surgery, which Cheung indicated that Next could accommodate.  Id. ¶ 13.

Shortly before Lawrence was to begin her work at Next, Cheung told Lawrence that she and another female executive would be leaving the company.  Id. ¶ 16.  When pressed for detail, Cheung described her decision to leave as a "symptom of the environment."  Id. ¶ 17.  Lawrence expressed her concern over these departures to Goldstein, who reassured her that he found her experience impressive and later gave her initially positive feedback on her work performance.  Id. ¶¶ 18-20; Lawrence Decl. ¶ 1.  Goldstein regularly supervised Lawrence's work during her

time at Next, holding weekly one-on-one meetings with her over Zoom.  Lawrence Decl. ¶ 4; PAC ¶¶ 20, 22, 27, 31, 37.

Around mid-May 2022, during one of these regular meetings, Goldstein shared with Lawrence that a younger female executive had complained to him that Lawrence had been "mean" to her.  Id. ¶ 22.  Goldstein described the younger colleague as "sensitive" and instructed Lawrence to make amends, which Lawrence did.  Id. ¶¶ 22-23.  In July 2022, Lawrence shared her own concerns with Goldstein about Goldstein's male Chief of Staff's aggressive behavior, especially toward women, based on complaints that had been made to her mostly by female employees.  Id. ¶¶ 24-27. Goldstein dismissed these complaints, and stated that he had heard comments about Lawrence's own "mean" behavior.  Id. ¶¶ 27-28.  When Lawrence requested specifics, Goldstein replied that they were "secret."  Id. ¶ 28.  Goldstein then asked Lawrence about an e-mail she had sent that had made him worry she was "mad at him," and, when Lawrence explained that the e-mail was merely legal advice, agreed that it was "silly" for him to worry.  Id. ¶ 29.

In this same July 2022 meeting, Lawrence shared with Goldstein that she was worried her gender might be causing negative feedback on her work performance, and stated that she should not be held to a different standard than her male colleagues.  Id. ¶ 30.  Goldstein assured Lawrence that any

feedback had "nothing to do with role or gender," but indicated that it was important for Lawrence to be liked at Next.  Id. Goldstein and other leaders gave Lawrence otherwise positive feedback throughout the course of her employment, with Goldstein indicating that she was "doing a great job" during a later one-on-one.  Id. ¶ 31.

Lawrence later brought another female employee's concern about the "demeaning behavior" of another male executive to Goldstein's attention, and expressed a general fear "that women leaders at NEXT were being intimidated to 'not have a voice.'" Id. ¶ 32.  Goldstein dismissed these concerns, stating that "everyone" thinks the male executive in question is a "bully" at first but eventually ends up saying he is a "teddy bear" and "love[s] him."  Id. ¶ 33.  After this meeting, Goldstein continued to offer positive feedback on Lawrence's work.  Id. ¶¶ 33-35.  In a Vanguard Law Magazine article dated December 2, 2022, Goldstein praised Lawrence's passion and expertise, stating that she had a "unique set of skills that will help continue to grow the company," and described the company as "incredibly lucky to have [her]."  Id. ¶ 36.

In a regularly scheduled one-on-one meeting on January 5, 2023, Goldstein again complimented Lawrence's work, stating that she was doing "amazing things" for the company and expressing his approval of her work and leadership.  Id. ¶ 37.  During the

same meeting, Lawrence shared with Goldstein that she would require an oophorectomy to treat her breast cancer, that this operation was scheduled for January 20, 2023, and that future procedures might also be necessary.  Id. ¶ 39.  Lawrence also requested medical leave for this procedure.  Id. ¶ 40.  Lawrence assured Goldstein that she "would take as short a medical leave as possible," and Goldstein reassured her that, "We would never fire you for health reasons," which Lawrence says she found "odd."  Id.

On January 9, 2023, over Zoom, Goldstein fired Lawrence. Id. ¶¶ 41–42.  During this Zoom meeting, Goldstein was accompanied by attorney Doreen Lilienfeld of Shearman & Sterling LLP.  Id. ¶ 42.  Goldstein informed Lawrence that he had conducted an "'emergency' 360 review" of Lawrence's work after their January 5 meeting, and had "found out" that she was "bullying" and creating a "hostile work environment."  Id. ¶ 43. When Lawrence requested specifics, Goldstein replied, "wow, maybe you really don't know what a bully you are".  Id. Attorney Lilienfeld later claimed that she had in fact begun an "investigation" into Lawrence's workplace conduct months before the firing took place, and that it was this investigation, and not the emergency review, that had prompted Lawrence's dismissal.  Id. ¶ 44.

## III. ANALYSIS

Goldstein argues that this Court lacks personal jurisdiction over him under both the Due Process Clause of the Constitution and Massachusetts's long-arm statute, Mass. Gen. Laws ch. 223A, § 3, both because Goldstein resides and works in California and so is not subject to this Court's general jurisdiction, and because Goldstein's contacts with Massachusetts do not relate to Lawrence's claims, he did not purposefully avail himself of the forum, and the exercise of jurisdiction over him would be unreasonable nor did he transact business in Massachusetts in the sense required by the long-arm statute, so he is not subject to this Court's specific jurisdiction. Goldstein's Opp'n Mot. Amend Compl. 4-10. This Court disagrees, and rules that it has personal jurisdiction over Goldstein.

Second, Goldstein argues that Lawrence's Chapter 151B retaliation claim fails because she has failed adequately to plead causation, Goldstein's Mem. Mot. Dismiss 11-12, and that her tortious interference claim fails because she has not made an adequate showing of the elements required, particularly the improper motive or "actual malice" element, id. at 13; see also Goldstein's Reply Mot. Dismiss 15-16. Drawing all inferences in Lawrence's favor, this Court rules that Lawrence has alleged sufficient facts to support both claims.

### A.    Standard of Review

Federal Rule of Civil Procedure Rule 15(a) provides that courts ought "freely give leave" to parties to amend their pleadings "when justice so requires."  Fed. R. Civ. P. 15(a)(2). "That rule notwithstanding, '[a] court may deny leave to amend for a variety of reasons, including "futility, bad faith, undue delay, or a dilatory motive on the movant's part."'"  American Bd. of Internal Med. v. Salas Rushford, 114 F.4th 42, 66 (1st Cir. 2024) (quoting Privitera v. Curran (In re Curran), 855 F.3d 19, 27-28 (1st Cir. 2017)).  Futility, which is the ground for denial Goldstein raises here, "means that the complaint, as amended, would fail to state a claim upon which relief could be granted."  D'Agostino v. ev3, Inc., 845 F.3d 1, 6 (1st Cir. 2016) (quoting Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996)).  "[W]hen 'reviewing for "futility," the district court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion.'"  O'Leary v. New Hampshire Boring, Inc., 323 F.R.D. 122, 126 (D. Mass. 2018) (Cabell, U.S.M.J.) (quoting Glassman, 90 F.3d at 623).  Thus, the following standards are applied to Lawrence's motion to amend to determine whether such amendment would be futile.

### 1. Fed. R. Civ. P. 12(b)(2)

To withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(2), Lawrence bears the burden of establishing that

personal jurisdiction exists over the defendants.  A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016).  When, as here, a district court rules on such a motion without an evidentiary hearing, the "prima facie" standard applies, and Lawrence must demonstrate that both the state long-arm statute and the Due Process Clause are satisfied by specific facts in the record.  United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618-19 (1st Cir. 2001).  While the Court need not "credit conclusory allegations or draw farfetched inferences," Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994), "[t]he Court must accept [Lawrence's] properly supported allegations as true and resolve all factual disputes in [her] favor," Landmark Bank v. Machera, 736 F.Supp. 375, 380 (D. Mass. 1990), while also considering "uncontradicted facts proffered by the defendant," C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014).  "[T]he inquiry is whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction."  Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008).

### 2. Fed. R. Civ. P. 12(b)(6)

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint "that states a claim for relief must contain . . .  a short and plain statement of the claim showing

that the pleader is entitled to relief."  To test the
sufficiency of the pleading, a defendant can file a motion to
dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  To survive a
motion to dismiss, the complaint must include sufficient factual
allegations that, accepted as true, "state a claim to relief
that is plausible on its face." Bell Atl. Corp. v. Twombly, 550
U.S. 544, 570 (2007).  Courts "draw every reasonable inference"
in favor of the plaintiff, Berezin v. Regency Sav. Bank, 234
F.3d 68, 70 (1st Cir. 2000), but they disregard statements that
"merely offer legal conclusions couched as fact or threadbare
recitals of the elements of a cause of action," Ocasio-Hernández
v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (cleaned up).

**B.  Personal Jurisdiction**

"[A] federal district court may exercise either general or
specific jurisdiction over a defendant." Baskin-Robbins
Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 35 (1st
Cir. 2016).  General jurisdiction is not argued here, because
Lawrence concedes that Goldstein "primarily works and resides in
California," PAC ¶ 3, and thus is not "essentially at home" in
the forum as general jurisdiction would require, Ford Motor Co.
v. Montana Eighth Jud. Dist. Ct., 592 U.S. 351, 358 (2021)
(quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564
U.S. 915, 919 (2011)).  Turning to specific jurisdiction,
Goldstein argues that this Court does not have specific

jurisdiction over him either, because none of the relevant constitutional requirements is satisfied, and, to the extent that the requirements of the Massachusetts long-arm statute are different, they are stricter.  Goldstein's Mem. Mot. Dismiss 4-10; Goldstein's Opp'n Mot. Amend Compl. 7-13.  Lawrence argues that all constitutional and statutory requirements are satisfied here.  Lawrence's Opp'n Mot. Dismiss 3-10.  This Court agrees with Lawrence.

For the exercise of this Court's personal jurisdiction to comport with the Due Process Clause, Goldstein must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Baskin-Robbins Franchising LLC, 825 F.3d at 35 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  To decide whether the Court has specific jurisdiction over Goldstein, an out-of-state defendant, under this standard, the First Circuit adopts a three-part test:

> First, the legal claims must relate to or arise out of the defendant's contacts in the forum.  Second, the defendant's contacts must constitute "purposeful availment of the benefits and protections" of the forum's laws.  Third, the exercise of jurisdiction must be reasonable, in light of the First Circuit's "gestalt factors."

EMC Corp. v. Petter, 104 F. Supp. 3d 127, 133 (D. Mass. 2015) (Hillman, J.) (citations omitted) (quoting Phillips Exeter Acad.

v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999)).  Lawrence must prevail on all three prongs of the test to establish specific jurisdiction.  "All three of these elements must be present for specific jurisdiction to attach." Baskin-Robbins Franchising LLC, 825 F.3d at 35.

Since Lawrence has the burden of proof on this issue, she must show "affirmative proof" sufficient to support her jurisdictional allegations when challenged.  Machera, 736 F. Supp. 375, 380 (D. Mass. 1990) (quoting Chlebda v. H.E. Fortna & Brother, Inc., 609 F.2d 1022, 1024 (1st Cir. 1979)).  Applying this rule, this Court specified in its Order granting Lawrence leave to file a motion for leave to file an amended complaint that, were she to do so, she must include "evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction."  A Corp., 812 F.3d at 58; Order, ECF No. 43.  Lawrence filed a declaration with her proposed amended complaint.  See Lawrence Decl.

The facts at issue here are not complex: Lawrence is a longtime Massachusetts resident, which fact was known to Next and, Lawrence alleges, to Goldstein when she was hired. Lawrence Decl. ¶ 1-4.  As Next's CEO, Goldstein played an important role in Lawrence's hiring as Next's General Counsel, signing her offer letter and providing her with assurances after she became concerned over the departure of two female executives

before her start date.  Id. ¶ 1.  Lawrence further states that
she conducted most of the meetings with Goldstein, including the
crucial January 2023 ones, from Massachusetts.  Id. ¶ 5.

Conversely, Goldstein lives and works from California, from
which state he conducted the meetings at issue.  Goldstein Decl.
¶¶ 4, 6.  There is no dispute that the two met regularly over
Zoom during the just over ten-month period in which Lawrence
worked at Next.  Lawrence Decl. ¶ 4; Goldstein Decl. ¶ 6
(referring to "the conversations Ms. Lawrence alleges that we
had").  Goldstein states that during these Zoom meetings he "did
not know whether Ms. Lawrence was in Massachusetts or if she was
appearing on Zoom from any location," and that she was not
required to ask him for permission to travel.  Goldstein Decl. ¶
6.  Lawrence states that "based on the context and content" of
her conversations with Goldstein, she believes that Goldstein
knew she was in Massachusetts during the meetings in question
here, because she would have had to disclose her travel plans to
him as her "direct supervisor," and that "[a]t the time of [her]
hire and thereafter, Goldstein communicated to [her] that he
understood [she] was living and working in Massachusetts."
Lawrence Decl. ¶¶ 4-5.[5]  Lawrence also specifically alleges that

_____

[5] This Court does not find the issue whether Lawrence had to
inform Goldstein of her travel plans to be dispositive.
Lawrence alleges that Goldstein knew she was a Massachusetts
resident when hired and thereafter, and that this fact was

she was in Massachusetts "during most, if not all, of [the] meetings and conversations with Goldstein that are identified in [her] court complaint," and that she recalls "being in Massachusetts during [her] conversations with Goldstein in January 2023."  Lawrence Decl. ¶ 5.

This Court rules that both the constitutional and state law requirements for specific personal jurisdiction are satisfied here.  First, all three prongs of the Due Process test are met. The conduct at issue -- Goldstein's firing of Lawrence over Zoom and the virtual interactions that led up to it -- is related to Goldstein's contacts with the forum, Goldstein purposefully availed himself of the benefits and protections of Massachusetts law by regularly communicating with and supervising a resident employee to conduct a significant part of his business, and it is reasonable to find jurisdiction here given that Goldstein is the CEO of a company with a subsidiary-owned office in Massachusetts, and which hired a Massachusetts resident as its

---

included in her initial offer letter, which Goldstein signed. See Lawrence Decl. ¶ 1; PAC ¶¶ 15, 20.  Despite the rule that the burden of proof on the personal jurisdiction issue falls on Lawrence, this Court must accept "specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim."  Massachusetts Sch. of L. at Andover, Inc. v. American Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). This Court therefore draws the reasonable inference that Goldstein knew it was at least likely that Lawrence would be in Massachusetts for many, if not most, of their virtual meetings.

General Counsel, and because the other reasonableness factors, such as Massachusetts's interest in applying its antidiscrimination laws to protect its residents, also favor Lawrence.

Insofar as they are different, the requirements of the Massachusetts long-arm statute are also satisfied.  The Massachusetts statute's "transacting business" requirement is interpreted in a way roughly analogous to the constitutional Due Process test, see Rissman Hendricks & Oliverio, LLP v. MIV Therapeutics Inc., 901 F. Supp. 2d 255, 261 (D. Mass. 2012) (Wolf, J.), and any requirements specific to the statute are also satisfied, as Massachusetts case law shows.

Thus, while acknowledging that the remote work circumstances here present novel legal issues, this Court rules that it has personal jurisdiction over Goldstein.

### 1. Relatedness

For the relatedness prong of the Due Process test to be satisfied, Lawrence's cause of action must arise directly out of, or be closely related to, Goldstein's contacts in the forum. Harlow v. Children's Hosp., 432 F. 3d 50, 61 (1st Cir. 2005). Those contacts must form an "important, or [at least] material, element of proof" in the case.  Id. (alteration in original) (quoting United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant Street Corp., 960 F.2d 1080, 1089 (1st Cir. 1992)).  "A

[19]

broad 'but-for' argument is generally insufficient.  Because '"but for" events can be very remote, . . . due process demands something like a "proximate cause" nexus.'"  Id. (alteration in original) (quoting Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg., 295 F.3d 59, 65 (1st Cir. 2002)).  "[S]trict adherence to a proximate cause standard in all circumstances is unnecessarily restrictive," particularly when it does not correlate well with the crucial underlying issue of foreseeability.  Id. (quoting Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 715 (1st Cir. 1996)).[6]

Lawrence satisfies the relatedness prong because her claims against Goldstein are all based on Goldstein's communications with her in Massachusetts, and communications directed into Massachusetts may be considered contacts in the forum for relatedness purposes.  "The transmission of information into Massachusetts by way of the mails, the internet, or the

---

[6] The Supreme Court has recently clarified that, although "the phrase 'relate to' incorporates real limits," it does not require "a strict causal relationship between the defendant's in-state activity and the litigation."  Ford Motor Co., 592 U.S. at 362.  The First Circuit has not yet detailed how Ford ought be integrated into its own relatedness framework, but see Capello v. Restaurant Depot, LLC, 89 F.4th 238, 245-47 (1st Cir. 2023) (noting that the Supreme Court rejected a "causation-only approach"), although it has reiterated that "in-state injury alone is not sufficient under the Due Process Clause to prove relatedness for tort claims," Vapotherm, Inc. v. Santiago, 38 F.4th 252, 260-61 (1st Cir. 2022).

telephone is decidedly a contact for purposes [of] the
relatedness analysis." LaVallee v. Parrot-Ice Drink Prods. of
Am., Inc., 193 F. Supp. 2d 296, 303 (D. Mass. 2002) (Gorton,
J.); see also Trans National Travel, Inc. v. Sun Pac. Intern.
Inc., 10 F. Supp. 2d 79, 83 (D. Mass. 1998) (Harrington, J.)
(finding personal jurisdiction over corporate executive
defendant based only on "telephone calls, letters, and
facsimiles" sent on behalf of the company).[7]  Even applying a
strict proximate cause standard, Goldstein's contacts with the
forum are not only material to Lawrence's claims, but are the

---

[7] The Court observes, without ruling, that Goldstein's non-
telework contacts with Lawrence would likely not satisfy the
relatedness prong under the First Circuit's "proximate cause"-
adjacent framework.  "Jurisdiction over the individual officers
of a corporation may not be based on jurisdiction over the
corporation"; rather, there must be an "independent basis" for
exercising jurisdiction.  Confederate Motors, Inc. v. Terny, 831
F. Supp. 2d 405, 411 (D. Mass. 2011) (Dein, U.S.M.J.) (quoting
Johnson Creative Arts, Inc. v. Wool Masters, Inc., 573 F. Supp.
1106, 1111 (D. Mass. 1983) (Garrity, J.)).  Goldstein's one
visit to Next's Waltham office during Lawrence's employment is a
far cry from the continuous solicitation of the Montana market
that the Supreme Court judged sufficient to find jurisdiction in
Ford.  See Ford Motor Co., 592 U.S. at 361-68.  In other words,
a corporate officer ought not be subject to personal
jurisdiction in every state where he visited a company office on
one occasion, if the injury in the forum is not obviously
related to that visit in any way.  Similarly, the proximate
cause-adjacent relatedness test might bar a finding of
jurisdiction where a defendant met with a plaintiff (whether
over Zoom or otherwise), perhaps even regularly, but did not
personally take the specific action of which the plaintiff
complains.  Thus, the relatedness prong provides an important
backstop against the cascade of remote work litigation to which
Goldstein suggests a finding of jurisdiction here might lead.
See Goldstein's Opp'n Mot. Amend Compl. 2.

proximate cause of all of them: via their January 2023 Zoom
meetings, Lawrence alleges, Goldstein both learned that her
cancer would require more intensive treatment, and later fired
her, based on some combination of that information and prior
disagreements, which also occurred via Zoom communications sent,
at least for the most part, into the forum.  Therefore, the
relatedness prong is satisfied.

### 2. Purposeful Availment

The purposeful availment prong asks whether a defendant has
purposefully directed its activities towards the forum state in
a manner that could reasonably subject it to that state's
jurisdiction.  Swiss Am. Bank, 274 F.3d at 624.  Remote contacts
may be counted, and indeed may suffice, for a finding of
purposeful availment:

> It is not true that interstate remote communications
> are, by their nature, per se insufficient to
> constitute contacts that sustain personal
> jurisdiction. . . .  A nonresident defendant
> purposefully avails itself of the forum state when the
> defendant's actions "create a 'substantial connection'
> with the forum State."  A "substantial connection" can
> arise whenever the defendant deliberately directs its
> efforts toward the forum state.

C.W. Downer & Co., 771 F.3d at 68 (citations omitted) (quoting
Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).
"[I]n cases in which remote communications suppl[y] the
predicate for the contacts that ground specific or case-linked
personal jurisdiction over an out-of-forum defendant," the three

factors considered key in this circuit are "the defendant's in-forum solicitation of the plaintiff's <u>services</u>, the defendant's anticipation of the plaintiff's in-forum <u>services</u>, and the plaintiff's actual performance of extensive in-forum <u>services</u>." <u>PREP Tours, Inc</u>. v. <u>American Youth Soccer Org.</u>, 913 F.3d 11, 20 (1st Cir. 2019) (quoting <u>Copia Commc'ns, LLC</u>, 812 F.3d at 6). "The focus in [the purposeful availment analysis] is on 'voluntariness and foreseeability.'" <u>Northern Laminate Sales, Inc.</u> v. <u>Davis</u>, 403 F.3d 14, 25 (1st Cir. 2005) (quoting <u>Sawtelle</u> v. <u>Farrell</u>, 70 F.3d 1381, 1391 (1st Cir. 1995)).

As a general matter, the way the purposeful availment test ought apply to remote work circumstances is not obvious. <u>See</u> Hon. M. Margaret Mckeown, <u>The Internet and the Constitution: A Selective Retrospective</u>, 9 Wash. J. L. Tech. & Arts 135, 146 (2014) ("So where does that leave us with Internet jurisdiction? Almost nowhere. . . . In my view, there is no coherent theme in jurisdiction cases, and the risk is that we may be heading toward nationwide jurisdiction. It becomes a gestalt exercise of lining up factors on both sides of the argument and assessing fairness."). Goldstein argues that he did not purposefully avail himself of the forum because he never interacted with Lawrence in Massachusetts and spent only one day there during her employment, and in general did not target Massachusetts with the deliberateness required. Goldstein's Mem. Mot. Dismiss 5;

Goldstein's Opp'n Mot. Amend Compl. 8-9.  Lawrence argues that
Goldstein's weekly Zoom meetings with her ought count, and
ultimately suffice, to satisfy the purposeful availment prong,
citing cases involving telephone calls, solicited professional
advice, and occasional visits.  Lawrence's Opp'n Mot. Dismiss 8-
9.  This Court agrees with Lawrence.  Because Goldstein hired
Lawrence knowing she would be working from Massachusetts, and
conducted frequent virtual meetings supervising the significant
work for his company that she did there, the purposeful
availment prong is satisfied.  Given the novelty of the remote
work issue here, the Court deals with the parties' arguments
here at some length.

First, some examples involving remote communications may
help to clarify the rule.  In PREP Tours, Inc., for instance,
the First Circuit concluded that preliminary negotiations over
phone and email between a California defendant and Puerto Rico
plaintiff tour company were insufficient to find purposeful
availment.  913 F.3d at 15-19.  In so holding, the First Circuit
stressed that, despite the defendant's initial, virtual
solicitation of the plaintiff's services in-forum, the open-
ended nature of the communications between the parties did not
suggest an "ongoing and close-working relationship" of the kind
that would satisfy the anticipation and extensive performance
prongs of the test.  Id. at 23.

[24]

Similarly, in Copia Commc'ns, LLC, the First Circuit ruled there was no personal availment where a contract was formed between a defendant Jamaica-based resort operator and a plaintiff Massachusetts-based internet services provider for equipment and services, but there was no contact beyond "the insubstantial contacts that anyone would have when buying goods and services from a company that itself happens to be in Massachusetts," coming up short on all three prongs of the test (solicitation, anticipation, and extensive performance). 812 F.3d at 5-6.

On the other hand, the First Circuit ruled the purposeful availment requirement satisfied where a defendant corporation and its president recruited the plaintiff employee at his home in Massachusetts, executed an employment contract contemplating that he would continue to work there, provided equipment, and "voluntarily facilitated" his work in Massachusetts by registering and maintaining a sales office in the state, satisfying all three prongs of the test by the "active formation of a long-term contractual relationship with a party reasonably known to be in Massachusetts . . . ; and the performance of work under that contract." Cossart v. United Excel Corp., 804 F.3d 13, 21-22 (1st Cir. 2015).

For her part, Lawrence relies on Yankee Grp., Inc. v. Yamashita, 678 F. Supp. 20, 23 (D. Mass. 1988) (Caffrey, J.),

where the court found personal jurisdiction over the defendant
Japanese corporation's president based on his having visited the
plaintiff Massachusetts corporations multiple times per year for
several years, in addition to sending telephone calls and
telexes into the forum to facilitate the parties' business
relationship, and Rissman, 901 F. Supp. 2d at 264-66, where the
court found personal jurisdiction based on the defendant
corporate officer's having solicited legal services from the
plaintiff Massachusetts law firm, albeit without visiting in
person, and frequently discussed legal services that were to be
performed in Massachusetts with the firm via phone and email.
See Lawrence's Opp'n Mot. Dismiss 8-9.  Drawing an analogy to
these cases, Lawrence observes that Goldstein was involved in
the initial hiring of Lawrence, then regularly supervised her
work from Massachusetts, in addition to serving as CEO of a
company with a Massachusetts office that Goldstein visited at
least once during her employment.  Id. 8; Lawrence Decl. ¶ 1.

     The latter case, Rissman, is more closely analogous, and
this Court finds its reasoning persuasive here.  As with the
defendant executive in Rissman, Goldstein regularly contacted
Lawrence for legal services to be performed from Massachusetts
as part of an ongoing contractual relationship that he oversaw
from its inception.  See Rissman, 901 F. Supp. 2d at 264.
Goldstein's attempt to distinguish Rissman on the grounds that,

[26]

in that case, "the defendant officer sought years of legal

advice from a law firm whose legal practice was based in

Massachusetts for business **in Massachusetts**," is ultimately

unavailing.  Goldstein's Reply Mot. Dismiss 7 (emphasis added).

There is in fact no indication that the defendants in <u>Rissman</u>

sought legal services from the plaintiff Massachusetts law firm

for Massachusetts-specific business; on the contrary, the

defendant executive argued there, much as Goldstein argues here,

that "the legal business his company solicited from Rissman

could have been completed anywhere," and therefore did not

constitute purposeful availment.  <u>Rissman</u>, 901 F. Supp. 2d at

265; Goldstein's Reply Mot. Dismiss 11-12.  The court in <u>Rissman</u>

found this argument "unpersuasive":

> Although the legal services contract between [the
> corporation] and Rissman was not negotiated or
> executed in Massachusetts, the plaintiff's legal
> practice was located in Massachusetts, a fact that was
> known to [the defendant] when he participated in [the
> corporation]'s engagement of Rissman.  Moreover, [the
> defendant] repeatedly sought advice and legal services
> from Rissman attorneys in Massachusetts throughout the
> course of Rissman's retention by [the corporation].

<u>Rissman</u>, 901 F. Supp. 2d at 265.  This Court rules Goldstein's

similar argument unpersuasive for the same reasons here.

Goldstein indirectly raises a related ground on which

Lawrence's situation could be seen as meaningfully different

from that of the plaintiff in <u>Rissman</u>: he characterizes

Lawrence's work in Massachusetts as based on nothing more than

"[her] choice to work remotely."  Goldstein's Reply Mot. Dismiss
12.  That is, unlike the Massachusetts law firm in <u>Rissman</u> -- or
the employee who worked out of a Massachusetts home office that
the defendant company registered for this purpose in <u>Cossart</u> --
Lawrence was a solo actor who could conceivably have moved
anywhere, and there is no indication that she was tied to Next's
Waltham office since, according to her initial offer letter, she
was hired to work remotely in Massachusetts, from which location
she would "report to Cheung."  PAC ¶ 15.

It is this feature of Lawrence's employment -- its directly
personal nature, without the forum-tied features of a
Massachusetts-based law firm or a solo employee working out of a
company's Massachusetts office -- that brings it within the
scope of yet-unsettled questions about the status of remote work
for purposes of personal jurisdiction.  <u>See generally</u> Kathryn M.
Couture, <u>Traditional Notions of Fair Play and Substantial</u>
<u>Justice?: The Interplay Between Remote Work, State Regulations,</u>
<u>and Personal Jurisdiction</u>, 29 Roger Williams U. L. Rev. 146
(2024).  There is not yet developed, controlling caselaw on this
issue.  <u>But see</u> <u>Collision Commc'ns, Inc.</u> v. <u>Nokia Sol. &</u>
<u>Networks Oy</u>, 485 F. Supp. 3d 282, 292 (D. Mass. 2020)
(Burroughs, J.) (finding no personal jurisdiction where
**plaintiff** New Hampshire company only "happened to allow" one of
its employees to work remotely from Massachusetts, from where he

frequently communicated with defendant); Tripp v. Ascentage
Pharm. Grp. Int'l, No. 22-5934, 2023 WL 5425506, at *4-6 (D.N.J.
Aug. 23, 2023) (gathering and distinguishing remote work cases
finding sufficient or insufficient contacts); Alexis v. Rogers,
No. 15cv691, 2016 WL 11707630, at *4-10 (S.D. Cal. Feb. 26,
2016) (finding purposeful availment under Ninth Circuit test on
facts similar to those at issue here); Magill v. Elysian Glob.
Corp., No. 20-CV-06742, 2021 WL 1221064, at *3-7 (D.N.J. Apr. 1,
2021) (finding no personal jurisdiction on similar facts in a
case involving a global cryptocurrency business, while noting
that "Plaintiff's claims against Defendants would be identical
if he lived anywhere else in the world").

    This Court finds C.W. Downer & Co.'s language of
"substantial connection," derived from Burger King and
ultimately from McGee v. International Life Ins. Co., 355 U.S.
220 (1957), particularly helpful in parsing this novel issue.
In McGee, the Supreme Court observed a "clearly discernable"
trend toward "expanding the permissible scope of state
jurisdiction over foreign corporations and other nonresidents,"
which it attributed in part to a "fundamental transformation of
our national economy over the years," such that "many commercial
transactions touch two or more States and may involves parties
separated by a full continent."  McGee, 355 U.S. at 222-23.  It
is for reasons analogous to these that this Court does not

believe that the literal distance between Goldstein in
California and Lawrence in Massachusetts, or the distinction
between the law firm in Rissman and the individual General
Counsel at issue here, makes a constitutional difference.  The
national economy has evolved -- especially since the COVID-19
pandemic -- such that an individual worker on the far side of
the country from her employer can have just as substantial a
connection with her supervisor as she would have were they
working within the same office building, and perform legal work
of a kind and substance that previously would have been
performed only by physically present in-house counsel, or
perhaps by a firm in another state.  See Holdon Deane Guy,
Comment, Internet Jurisdiction and the Law of the Land: Burger
King's Double Whopper, 93 Miss. L. J. 915 (2024) (arguing for a
"continuing relationships and obligations" test derived from
Burger King, and Travelers Health Ass'n v. Commonwealth of Va.
ex rel State Corp. Comm'n, 339 U.S. 643 (1950), and describing
businesses' increasingly ubiquitous reliance on remote work);
Chadwick v. St. James Smokehouse, Inc., No. 14-2708, 2015 WL
1399121, at *4-6 (D.N.J. Mar. 2015) (finding personal
jurisdiction in a retaliation case where the defendant
"continuously relied on Plaintiff to perform **essential functions**
of its business" remotely, and citing McGee's "substantial

connection" language (emphasis added)).[8]  It would be no more

than a thin legal fiction to pretend otherwise.[9]

"Questions of purposeful availment are often . . .

necessarily fact-dependent.  In this area, as the Supreme Court

has cautioned, there are no mathematical formulas on which to

rely.  And the hues are more 'grey[]' than 'black and white.'"

PREP Tours, Inc., 913 F.3d at 29-30 (quoting Kulko v. Superior

Ct. of Cal., 436 U.S. 84, 92 (1978)).  Nonetheless, "where the

defendant . . . has created 'continuing obligations' between

himself and residents of the forum, he manifestly has availed

himself of the privilege of conducting business there, and

---

[8] The District of New Jersey appears to have worked toward
developing an "essential functions" or "key piece" test for
determining whether an out-of-forum defendant has purposefully
availed itself of the forum by contracting to have work
performed there.  See Chadwick, 2015 WL 1399121, at *5
(observing that "[d]efendants created a 'substantial nexus' with
New Jersey by placing a **key piece** of their business in New
Jersey and engaging in continuous phone and e-mail exchanges
with [the plaintiff] for the purposes of conducting that
business," when defendants hired out-of-state plaintiff as their
principal buyer (emphasis added) (citing McGee, 355 U.S. at
223)); Tripp, 2023 WL 5425506, at *5 (distinguishing Chadwick on
this basis); Magill, 2021 WL 1221064, at *7 (citing Chadwick's
"essential functions" analysis and distinguishing on the grounds
that, in the case at bar, "[a]ll of Plaintiff's work and the
entire nature of Defendants' business was performed online with
world-wide scope").  This Court addresses similar issues in
considering the "extensive services" prong of the First
Circuit's test.

[9] In fact, this action is a clear example of these national
economic trends: as Next's CEO, Goldstein chose to hire
Lawrence, who resides on the far side of the country from him,
as Next's General Counsel.

because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." Burger King, 471 U.S. at 476 (quoting Travelers, 339 U.S. at 648).  Applying the First Circuit's test, the Court rules that the novel circumstances here are a distinction without constitutional difference: Goldstein has purposefully availed himself of the benefits and protections of Massachusetts's laws.  Like the defendant executives in Rissman and Cossart, Goldstein participated in soliciting Lawrence's services in the forum, and therefore must have reasonably foreseen that they would be performed there; beyond what those defendants did, Goldstein also personally and regularly oversaw the in-forum performance of those extensive services through communications directed into the forum.  See Cossart, 804 F.3d at 21 & n.3 (noting that the "non-forum defendants here actively facilitated -- and did not merely reasonably foresee -- the plaintiff's performance of the contract from Massachusetts").  The presence of Next's Waltham office may nudge the foreseeability of the in-forum performance of Lawrence's services up a notch, but it is not necessary. Rather, what matters most is that, per the terms of her initial offer letter, Lawrence was anticipated to be working remotely from Massachusetts throughout the course of her work for Next,

which Goldstein knew, and did in fact complete extensive work there in the period in which she met regularly with Goldstein, including the meetings on which her claims depend.  PAC ¶¶ 15, 19.[10]  This satisfies the constitutional requirements of voluntariness and foreseeability that are the core of the purposeful availment test.

### 3. Reasonableness

The reasonableness analysis is based on the Supreme Court's five so-called "Gestalt factors," drawn from Burger King, 471 U.S. at 477.  These factors are: 1) the burden on the defendant, 2) the forum State's interest in adjudicating the dispute, 3) the plaintiff's interest in obtaining convenient and effective

---

[10]  This Court has also considered the holding of Calder v. Jones, 465 U.S. 783, 790-91 (1984).  In Calder, the Supreme Court held that, where "intentional, and allegedly tortious, actions were expressly aimed" at the forum state, and employees were "primary participants" in an employer's alleged wrongdoing, personal jurisdiction over the out-of-state employee defendants is appropriate.  As the First Circuit has noted, "courts 'have struggled somewhat with Calder's import'" outside of its original defamation context.  Swiss Am. Bank, 274 F.3d at 624 (quoting Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1087 (9th Cir. 2000)).  Absent further guidance from the First Circuit as to the contours of Calder's role in determining purposeful availment, this Court need not, and does not, rely on Calder and its progeny, but it notes the more general rule that, "[w]hen an alleged injury sounds in tort," "'the threshold of purposeful availment is lower,'" particularly when the content of communications sent into the forum gives rise to an intentional tort action.  Kim v. Veglas, 607 F. Supp. 2d 286, 295 (D. Mass. 2009) (quoting Digital Equip. Corp. v. AltaVista Tech., Inc., 960 F. Supp. 456, 469 (D. Mas. 1997) (Lasker, J.)).

relief, 4) the interstate justice system's interest in obtaining efficient resolution, and 5) the shared interest of the states in promoting substantive social policies.  Id.; see also Adelson v. Hananel, 510 F.3d 43, 51 (1st Cir. 2007).

These factors also weigh in favor of finding that this Court has specific jurisdiction over Goldstein.  Goldstein argues that it is unreasonable to hale a California resident into court in Massachusetts, and that Massachusetts does not have a strong interest in adjudicating a dispute involving a California resident's conduct, especially when the conduct in question did not take place in Massachusetts.  Goldstein's Reply Mot. Dismiss 9.  As in Cossart, however, an out-of-state executive is under no "special or unusual burden" when haled into court in a state in which his company has an office, and with which he has significant contact via communications sent into the forum.  804 F.3d at 22 (quoting Bluetarp Fin., Inc. v. Matrix Constr. Co., Inc., 709 F.3d 72, 83 (1st Cir. 2013)); see also Burger King, 471 U.S. at 477 ("[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other consideration would render jurisdiction unreasonable.").  Moreover, Massachusetts has a clear interest in determining whether a resident employee who works in the Commonwealth has a meritorious claim under

Massachusetts employment discrimination law, see Cossart, 804
F.3d at 22, and a "stake in being able to provide a convenient
forum for its residents to redress injuries inflicted by out-of-
forum actors," Adelson, 510 F.3d at 51 (quoting Daynard v.
Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42,
62 (1st Cir. 2002)).

Likewise, the plaintiff's convenient and effective relief,
interests of the interstate justice system, and states' shared
policy interests factors weigh in Lawrence's favor, since, as
Lawrence points out, "Goldstein . . . is the main figure in this
story," having participated in every communication and decision
relevant to the adverse actions in question. Lawrence's Opp'n
Mot. Dismiss 2. If Goldstein is not a party to this action,
this may lead to duplicative actions in other states, burdening
both the parties and the justice system, and frustrating the
purposes of federal and state anti-discrimination laws.

As Goldstein argues, the reasonableness prong is easier to
satisfy when the plaintiff's showings on relatedness and
purposeful availment are stronger, and harder to satisfy when
they are weaker. Goldstein's Opp'n Mot. Amend Compl. 10;
Ticketmaster-New York, Inc., 26 F.3d at 210. Although
Lawrence's purposeful availment argument raises novel legal
issues, this Court does not consider her showing on this score
to be weak, and, as set out above, the relatedness prong is

[35]

satisfied.  Therefore, Lawrence is subject to no special burden on the reasonableness prong of the test.

For all these reasons, the reasonableness factors weigh in Lawrence's favor, and this Court holds that it is reasonable to subject Goldstein to personal jurisdiction in Massachusetts.

Because all three prongs of the Due Process test have been satisfied here, the Court also rules that subjecting Goldstein to this Court's personal jurisdiction does not offend the Due Process Clause.

### 4. The Massachusetts Long-arm Statute

Goldstein also argues that this Court lacks personal jurisdiction over him because the requirements of the Massachusetts long-arm statute have not been satisfied. Goldstein's Opp'n Mot. Amend Compl. 11-13.

Under Section 3(a) of the Massachusetts long-arm statute, Lawrence must show (1) that Goldstein transacted business in Massachusetts, and (2) that Lawrence's claim arose from that transaction of business, Mass. Gen. Laws ch. 223A, § 3(a); Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994).[11]  The transacting business requirement is construed "broadly," and

---

[11]  Lawrence references only the transacting business provision under Section 3(a), although her complaint refers broadly to Section Three.  See PAC ¶ 6; Lawrence's Opp'n Mot. Dismiss 4-6.  The Court need not address other sections of the Massachusetts Long Arm Statute because her Section 3(a) argument is meritorious.

applies to "any purposeful acts by an individual," such that "[p]hysical presence in Massachusetts is not required." Kim v. Veglas, 607 F. Supp. 286, 292 (D. Mass 2009) (quoting Hannon v. Beard, 524 F.3d 275, 280 (1st Cir. 2008)).

In general, "[t]he 'transacting business' requirement of the Massachusetts long-arm statute . . . merges with the constitutional due process analysis." Rissman, 901 F. Supp. 2d at 261. Some case law, however, suggests that the Massachusetts long-arm statute may impose more restrictive requirements than the federal Due Process Clause, at least in the sense that a plaintiff must show that one of the statute's specific jurisdictional grounds is satisfied. See Copia Commc'ns, LLC, 812 F.3d at 4; Cossart, 804 F.3d at 18-19 (citing Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 6 (1979)).

For the reasons set out above, if Goldstein's contacts with Massachusetts via hiring and participating in regular Zoom meetings with Lawrence may be counted as transacting business for purposes of the statute, then Lawrence's claims arise from that transaction, because Goldstein's virtual contacts with Lawrence are the subject of all of her allegations against both Next and Goldstein. See supra section III.B.1. Similarly, Goldstein's argument on the transacting business prong is resolved of by analogy to the Due Process test, but is examined briefly here to show that Massachusetts's courts have analyzed

that requirement in a way substantially similar to the federal purposeful availment requirement in the relevant respects.

As Lawrence points out, Massachusetts courts have held that frequent communications between a plaintiff employee and an out-of-state employer defendant may constitute "purposeful and continuous" contacts sufficient to satisfy the transacting business requirement. Hongyu Luo v. Tao Ceramics Corp., No. 13-CV-5280-F, 2014 WL 3048679, at *2 (Mass. Super. Ct. Apr. 10, 2014) (Curran, J.) (finding transacting business requirement satisfied where CEO spoke with plaintiff employee weekly for 15 months to direct plaintiff to secure in-state sales contracts); Lawrence's Opp'n Mot. Dismiss 5.  In Sonesta Int'l Hotels Corp. v. Central Fla. Invs., Inc., 47 Mass. App. Ct. 154, 160-61 (1999), the Massachusetts Appeals Court held that the defendant corporation's regular telephone and written communications to facilitate marketing and other services from the plaintiffs' Boston office (services that were, like Lawrence's, not forum-specific) satisfied the transacting business requirement. Similarly, here, Goldstein contacted Lawrence regularly when she was in Massachusetts to facilitate a significant part of his business.  Thus, on an analogy to Sonesta Int'l Hotels and as informed by this Court's purposeful availment analysis, this Court rules that the Massachusetts' long-arm statute's transacting business requirement is satisfied, and that, for the

reasons stated above, the "arising from" requirement is also satisfied.  See supra section III.B.2.

Therefore, because both the constitutional Due Process and Massachusetts long-arm statute requirements are satisfied, this Court rules that it has personal jurisdiction over Goldstein.

**C.   Fed. R. Civ. P. 12(b)(6) – Lawrence's Claims Against Goldstein**

After dismissing Lawrence's Chapter 151B interference claim (count four) and FMLA claim (count six) against both Next and Goldstein, and her PFML claim (count seven) against Goldstein only, this Court took Lawrence's claims of Chapter 151B retaliation (count three) and common law tortious interference (count five) against Goldstein under advisement, pending resolution of whether this Court had personal jurisdiction over Goldstein.  Elec. Clerk's Notes, ECF No. 41.  Having concluded that it has personal jurisdiction over Goldstein, this Court proceeds now to the merits of these remaining claims, and rules that Lawrence has pleaded sufficient facts to sustain plausible claims to relief on both counts.  Therefore, to the extent that it remains, Goldstein's motion to dismiss the remaining counts against him is DENIED, and the proposed amended complaint is judged to be not futile with respect to these claims.

**1. Chapter 151B Retaliation (count three)**

Goldstein argues that Lawrence's retaliation claim fails due to a lack of adequately pleaded causation, Goldstein's Mem. Mot. Dismiss 11-12, and because -- drawing on his argument from a related claim -- Goldstein and Next expressed support for Lawrence's need for health-related accommodations, so her argument on this count is based solely on the temporal proximity between one conversation about her health condition and her firing, id. at 15-16.  Lawrence argues that she shared significant new information about her protected disability immediately prior to her firing; that temporal proximity may suffice to clear the low pleading bar for retaliation claims; and that evidence of pretext may also be considered in determining whether discrimination was a motivating factor in an adverse employment action.  Pl.'s Opp'n Def. Next's Mot. Dismiss ("Lawrence's Opp'n Next Mot. Dismiss") 8-10, ECF No. 21; Lawrence's Opp'n Mot. Dismiss 11 n.5 (incorporating arguments against Next into argument against Goldstein, and noting that Goldstein opposed her retaliation claim only on the basis of gender discrimination).

This Court agrees with Lawrence.  The close temporal proximity between her request for medical leave and her termination, in view of the larger picture surrounding those events, is enough to suggest plausibly that her protected activity caused her termination.

[40]

To support a retaliation claim, "the plaintiff must show that 'he engaged in protected conduct, that he suffered some adverse action, and that "a causal connection existed between the protected conduct and the adverse action."'" Psy-Ed Corp. v. Klein, 459 Mass. 697, 707 (2011) (quoting Mole v. University of Mass., 442 Mass. 582, 591-92 (2004)).  Unlike its federal equivalents, Mass. Gen. Laws. ch. 151B "does not actually use the word 'retaliation,'" but "[a] claim of retaliation may succeed even if the underlying claim of discrimination fails." Id. at 706.  "[W]hile a causal connection must be established between protected conduct and adverse action, that connection may be shown either directly or by inference."  Id. at 710.

Lawrence alleges that, although she was assured that Next could accommodate her breast cancer diagnosis before she was hired, PAC ¶ 13, she was terminated just four days after she shared with Goldstein that she required additional treatment and requested medical leave -- despite Goldstein's statement at the time that, "We would never fire you for health reasons," id. ¶¶ 39-41.  Lawrence also alleges that Next subsequently "changed its story" regarding the reasons for her firing, id. ¶¶ 43-44, and that she consistently received positive feedback on her work up to and including the time of her final meeting with Goldstein, id. ¶¶ 20, 31, 35-37.

[41]

Neither Next nor Goldstein contests that Lawrence's request for medical leave constitutes protected activity. See Freadman v. Metropolitan Prop. & Cas. Ins. Co., 484 F.3d 91, 106 (1st Cir. 2007) (observing, in the ADA context, that requesting accommodation is protected conduct); DaPrato v. Massachusetts Water Res. Auth., 482 Mass. 375, 383-84 (2019) (treating a request for medical leave as protected conduct under the FMLA). It is also not disputed that Lawrence's firing was an adverse employment action.

Causation for retaliation purposes may be inferred when "adverse action is taken against a satisfactorily performing employee in the immediate aftermath of the employer's becoming aware of the employee's protected activity." Mole, 442 Mass. at 592. Indeed, it is settled law in the First Circuit "that temporal proximity alone can suffice to 'meet the relatively light burden of establishing a prima facie case of retaliation.'" Decaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008) (quoting Mariani-Colon v. Department of Homeland Sec. ex. Rel. Chertoff, 511 F.3d 216, 224 (1st Cir. 2007)).[12]  The four

---

[12] This and some other case law cited in this section refers to federal antidiscrimination statutes such as the ADA rather than to Mass. Gen. Laws ch. 151B.  "[T]he Supreme Judicial Court of Massachusetts . . . has indicated that federal case law construing the ADA should be followed in interpreting the Massachusetts disability law."  Sensing v. Outback Steakhouse of Fla., LLC, 575 F.3d 145, 153-54 (1st Cir. 2009) (quoting Whitney v. Greenberg, Rosenblatt, Kull & Bitsoli, P.C., 258 F.3d 30, 32

days between Lawrence's request for medical leave for her disability and the adverse action here is well within the bounds of what may give rise to a permissible inference of causation for purposes of a retaliation claim.  See Ortiz v. Federal Bureau of Prisons, 290 F. Supp. 3d 96, 107 (D. Mass. 2017) (Hillman, J.) (five days); Soto-Feliciano v. Villa Cofresi Hotels, Inc., 779 F.3d 19, 27 (1st Cir. 2015) (two weeks).

At the same time, it is true that temporal proximity alone can be insufficient, "particularly if '[t]he larger picture undercuts any claim of causation,'" Wright v. CompUSA, Inc., 352 F.3d 472, 478 (1st Cir. 2003) (quoting Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 16 (1st Cir. 1997)); but this is not such a case.  The First Circuit has listed some additional factors that may be considered in determining whether discriminatory motive played a causal role in an adverse employment action:

> In assessing discriminatory motive, a court may also
> consider other factors, including "among other things,
> 'the historical background of the . . . decision';
> '[t]he specific sequence of events leading up to the
> challenged decision'; '[d]epartures from the normal
> procedural sequence'; . . . '[any] contemporary
> statements by members of the decisionmaking body,'"
> and "[s]ubstantive departures . . . , particularly if
> the factors usually considered important by the

n.1 (1st Cir. 2001)).  Furthermore, "[c]ase law under other federal anti-discrimination statutes . . . has also been regarded as instructive."  Id. (citing Cox v. New England Tel. & Tel. Co., 414 Mass. 375, 384 (1993); see also DaPrato, 482 Mass. at 383 n.12.

decisionmaker strongly favor a decision contrary to
the one reached.  In addition, "doubts about the
fairness" of an employer's decision or an employer's
"'misjudg[ing]'" of an employee's qualifications,
while not necessarily dispositive, "'may be probative
of whether the employer's reasons are pretexts for
discrimination.'"

Hodgens v. General Dynamics Corp., 144 F.3d 151, 168-69 (1st

Cir. 1998) (alterations in original) (citations omitted).  Here,

Lawrence's allegation that Next "changed its story" regarding

the reason for the termination, PAC ¶¶ 43-44, in addition to the

consistently positive feedback Lawrence received both during the

period of the alleged investigation and within the meeting that

allegedly precipitated the emergency review of her record, id.

¶¶ 31, 35-37, represents a specific sequence of events

supporting an inference of discriminatory pretext and thus of

causation, see Gómez-González v. Rural Opportunities, Inc., 626

F.3d 654, 662-63 (1st Cir. 2010) (observing that

"[discriminatory p]retext can be shown by such weaknesses,

implausibilities, inconsistencies, incoherencies, or

contradictions in the employer's proffered legitimate reasons

for its action that a reasonable factfinder could rationally

find them unworthy of credence and hence infer that the employer

did not act for the asserted non-discriminatory reasons"

(quoting Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir.

1997))).  Because temporal proximity alone may suffice to imply

causation, and because the larger picture does not undercut, but

[44]

rather supports, the inference that Lawrence's protected
activity caused Goldstein's adverse employment action, Lawrence
has alleged plausibly that her firing was an act of
discriminatory retaliation.  Therefore, insofar as it remains,
Goldstein's motion to dismiss this count is denied, and her
motion to amend is not futile on this score.

### 2. Tortious Interference (count five)

Lawrence claims that Goldstein committed tortious
interference with her advantageous business relationships.  PAC
¶¶ 63-65.  Goldstein contends that Lawrence fails to make out
any of the basic elements of the tort, particularly the "actual
malice" element.  Goldstein's Mem. Mot. Dismiss 13.

This Court rules that Lawrence has pleaded enough facts to
support a plausible claim for relief on this count, because she
had adequately alleged discriminatory motive and lack of a
legitimate business purpose, which in turn support an inference
of actual malice.

To support a tortious interference claim, Lawrence must
allege that: "(1) [s]he had an advantageous relationship with a
third party (e.g., a present or prospective contract or
[business] relationship); (2) the defendant knowingly induced a
breaking of the relationship; (3) the defendant's interference
with the relationship, in addition to being intentional, was
improper in motive or means; and (4) the plaintiff was harmed by

[45]

the defendant's actions." <u>Hamann</u> v. <u>Carpenter</u>, 937 F.3d 86, 93
(1st Cir. 2019) (quoting <u>Blackstone</u> v. <u>Cashman</u>, 448 Mass. 255,
260 (2007))  "Where the defendant is a corporate official acting
in the scope of his corporate responsibilities, a plaintiff has
a heightened burden of showing the improper motive or means
constituted 'actual malice,' that is, 'a spiteful, malignant
purpose, unrelated to the legitimate corporate interest.'" <u>Psy-</u>
<u>Ed Corp.</u>, 459 Mass. at 716 (quoting <u>Blackstone</u>, 448 Mass. at
260-61).  Actual malice need not be the only factor, but it must
be "the 'controlling factor' in any interference." <u>Tuli</u> v.
<u>Brigham & Women's Hosp.</u>, 656 F.3d 33, 43 (1st Cir. 2011)
(quoting <u>Weber</u> v. <u>Community Teamwork, Inc.</u>, 434 Mass. 761, 781
(2001)).

    As Lawrence observes, the malice required for a tortious
interference claim is not necessarily the same as the
discriminatory or retaliatory intent required under Chapter
151B.  Pl.'s Opp'n 18.  For example, a jury could find actual
malice based on "retaliation or ill will." <u>Draghetti</u> v.
<u>Chmielewski</u>, 416 Mass. 808, 817 (1994).  On the other hand, a
finding that discrimination was the "real reason" for an action
will support a ruling of at least improper motive or means.
<u>Comey</u> v. <u>Hill</u>, 387 Mass. 11, 19-20 (1982); <u>see also</u> <u>Bray</u> v.
<u>Community Newspaper Co., Inc.</u>, 67 Mass. App. Ct. 42, 48 (2006)
("Discrimination constitutes an improper means or motive for

[46]

purposes of an interference claim, and constitutes actual malice
. . . ."); but see Weber, 434 Mass. at 782 (observing that a
finding of discrimination "might, but does not necessarily,
support an inference of actual malice," but clarifying that
discriminatory animus may be taken into account when deciding if
actual malice was the controlling factor in an employment
decision).  The inference that malice was a "controlling" factor
may rest on circumstantial evidence, but must be "derived from a
'rational inference of probabilities from established facts,'"
Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 664 (1981) (citing
Bigwood v. Boston & N. St. Ry., 209 Mass. 345, 348 (1911)), and
not from mere "possibilities," id. (citing Alholm v. Wareham,
371 Mass. 621, 627 (1976)).

    Lawrence adequately pleads that Goldstein acted with ill
will, unrelated to a legitimate corporate interest, in
terminating her employment.  Because tortious interference
encompasses retaliation and ill will, virtually all of the
allegations supporting Lawrence's discrimination and retaliation
claims, including her otherwise dismissed sex-based
discrimination claims, support her claim of tortious
interference.  Evidence of malice must be considered
"collectively," Gram, 384 Mass. at 665: here, the close temporal
proximity between Lawrence's request for medical leave and her
termination, along with the other allegations suggesting

[47]

pretext, see supra section III.C.1, in addition to Goldstein's
alleged pattern of ignoring Lawrence's complaints while
presenting her with unspecified complaints about her own
behavior, see supra section II, supports a plausible inference
that Goldstein interfered with Lawrence's business relationship
with Next not out of a legitimate business interest, but rather
out of actual malice.  Therefore, because Lawrence has plausibly
pleaded disability-based retaliation and other facts suggesting
malice on Goldstein's part, she has cleared the low plausibility
bar at this stage.  Insofar as it remains, Goldstein's motion to
dismiss this count is denied, and her motion to amend is not
futile on this score.

## IV.  CONCLUSION

As Lawrence's motion to amend her complaint against
Goldstein, ECF No. 48, is not futile, this Court ALLOWS that
motion under Federal Rule of Civil Procedure 15(a)(2).  In
addition, this Court rules that it has personal jurisdiction
over Goldstein, and thus, to the extent that it remains,
Goldstein's motion to dismiss for lack of personal jurisdiction
under Federal Rule of Civil Procedure 12(b)(2), ECF No. 11, is
DENIED.  This Court also rules that Lawrence has pleaded
plausible claims of disability-based retaliation under Chapter
151B and common law tortious interference against Goldstein, and
thus Goldstein's motion to dismiss for failure to state a claim

under Rule 12(b)(6) of the Federal Rule of Civil Procedure, ECF

No. 11, to the extent that it remains, is also DENIED as to the

remaining claims against him.

**SO ORDERED.**

_/s/ William G. Young_
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[13]

---

[13] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 47 years.

[49]